J-S14022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DORMEN LISBY | : | |
| | : | No. 1042 EDA 2017 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered February 22, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012318-2015

BEFORE:   OTT, J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED MAY 11, 2018**

Appellant Dormen Lisby appeals from the judgment of sentence imposed on February 22, 2017, for his convictions of possession of a firearm by a prohibited person, carrying a firearm without a license, carrying a firearm on a public street in Philadelphia, and possession of a firearm with an altered manufacturer's number.[1] He challenges the sufficiency of the evidence. We affirm on the basis of the trial court opinion.

Lisby was tried without a jury on November 22, 2016. The trial court recounted the facts established at trial as follows:

> On November 17, 2015, at about 11:00 p.m., Philadelphia Police Officer Timothy Stephen and his partner Keith White were on routine patrol in the 3600 block of Germantown Avenue in

---

\* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105, 6106, 6108, and 6110.2, respectively.

Philadelphia when Officer Stephen observed a [D]odge Caravan with Delaware plates, the windows of which were heavily tinted making it impossible to see inside the vehicle. When the Caravan pulled to the curb without the driver using his turn signal the officers activated the emergency lights on their police car and pulled up behind it. Officer White activated the spot light[] on top of the police car and directed it at the Caravan. However, because of the tint, the officers could only see the silhouettes of the three individuals inside it, two of whom were sitting in the front driver and passenger seats and the third male, identified as Jafiq Barnes, was sitting in the rear of the Caravan. From his patrol car, Officer Stephen observed the vehicle rock and saw the silhouettes of the two persons in the front seat moving about in their seats. He did not see the silhouette of the person in the rear of the Caravan move at all.

Upon observing the foregoing, Officers Ste[ph]en and White exited their patrol car; Officer Stephen walked up to the front passenger side window of the Caravan and Officer White went to the driver's side window and began speaking to the vehicle's driver[.] Officer Stephen opened the front passenger door so that he could hear the conversation between the driver and Officer White for his and Officer White's safety. When he did so, Officer Stephen observed [Lisby] sitting in the front passenger seat with a cigar and green leafy material in his lap and a jar in the door pocket, which the officer knew, based on his experience, is used to hold marijuana. He also saw a third male sitting on a bench in the rear of the vehicle, the middle seat of which was missing.

Upon making these observations, Officer Stephen asked [Lisby] if he had identification and he said he did not. During the conversation, [Lisby] moved, which caused the cigar to fall onto the floor of the Caravan. [Lisby] also appeared to become very nervous; his hands began shaking, he started breathing very heavily, and he repeatedly asked Officer Stephen if he was in trouble. As he was speaking to [Lisby], Officer Stephen noticed a half[-]burned marijuana cigarette in a cup holder in the center console and also detected a strong odor of marijuana inside the vehicle.

Based on their observations, the officers concluded that they had enough information to remove the occupants from the Caravan and placed them in the backseat of their patrol car so that they could search the vehicle. Once the three occupants were

secured, the officers returned to the Caravan and began searching it for contraband. In the pocket of a jacket on the seat on which [Lisby] was sitting, Officer Stephen recovered a .45 caliber FEG hand gun loaded with four or five rounds, one of which was in the chamber. After recovering the firearm, both [Lisby] and the driver of the vehicle were taken into custody and the handgun was placed on a property receipt.

Jafiq Barnes, who was seventeen years old at the time, spoke to Officer Stephen that evening and told him that he owned both gun[s] found inside the Caravan[2] and that he put one of the guns [] under the front passenger seat and the other one under the driver's seat as the officers were approaching the Caravan.

An examination of the .45 caliber handgun revealed that it was operable and that its serial number had been obliterated.

In his defense, [Lisby] called Robert Rachlin as a witness. In the course of working in a law office as an intern, Mr. Rachlin interviewed Jafiq Barnes, who told him that he was sitting in the rear of the Caravan when the police commenced their investigation. Mr. Barnes related that when he first got into the Caravan he got into its front passenger seat because [Lisby] had yet to be picked up and that after [Lisby] got into the vehicle, he placed a Colt .45 handgun under the front passenger seat and went to the rear of the Caravan. Finally, Barnes stated to Mr. Rachlin that the .45 caliber handgun recovered by Officer Stephen belonged to him and not [Lisby] and that the other gun discovered inside the Caravan did not belong to him.

Trial Court Opinion, filed October 16, 2017, at 2-4 (citations to the notes of

testimony and footnote omitted). The court convicted Lisby of the above-listed

_____

[2] A second gun was recovered from the "radio area of the vehicle." **See** Motion to Suppress Evidence, Ex. A (Philadelphia Police Department Investigation Report); N.T., 11/22/16, at 24 (trial court sustaining objection to testimony about "what was on the radio" because "Mr. Lisby is not charged with those"); **id.** at 43 (Officer Stephen recounting that he told Jafiq Barnes that there was a gun recovered from "by the radio").

- 3 -

offenses, and sentenced him to an aggregate of 4 to 10 years' incarceration followed by five years' probation.

Lisby appealed, and raises the following issue:

Is the evidence sufficient as a matter of law to sustain [Lisby]'s conviction for the crimes of violations of the uniform firearms act, 18 Pa.C.S.A. §§ 6105, 6106, 6108, and 6110.2, where the competent evidence of record did not establish beyond a reasonable doubt that [Lisby] constructively possessed the firearm recovered in a vehicle in which [Lisby] was a passenger where the evidence established the following:

(1) when [Lisby] was removed from the vehicle by police, they did not immediately observe a gun on the seat that [Lisby] had been seated in,

(2) another firearm was recovered hidden beneath the radio in the dashboard of the vehicle,

(3) the driver of the vehicle was attempting to block the police from viewing the radio area where the other gun was hidden,

(4) there was a third passenger in that vehicle—Mr. Barnes—who stated to police that both firearms belonged to him, and

(5) the vehicle did not belong to [Lisby].

Lisby's Br. at 4.

"Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Ballard***, 80 A.3d 380, 390 (Pa. 2013) (citation omitted). We must determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established

beyond a reasonable doubt. *See Commonwealth v. Dale*, 836 A.2d 150, 152 (Pa.Super. 2003). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Brown*, 23 A.3d 544, 559 (Pa.Super. 2011) (*en banc*) (citation omitted).

Further, "[a]s an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." *Commonwealth v. Kinney*, 863 A.2d 581, 584 (Pa.Super. 2004) (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa.Super. 2007) (citation omitted).

To establish constructive possession of contraband, the Commonwealth must show that the defendant has "the ability to exercise conscious dominion" over the contraband; that is, "the power to control the contraband and the intent to exercise that control." *Commonwealth v. Valette*, 613 A.2d 548, 550 (Pa. 1992). The "intent to maintain a conscious dominion may be inferred from the totality of the circumstances," and "constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." *Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011) (citations and brackets omitted).

The trial court concluded that (1) the Commonwealth presented sufficient evidence that Lisby constructively possessed the firearm found in a jacket lying on the seat on which Lisby was sitting, because "[i]ts location allowed [the court] to infer that [Lisby] not only was aware of the existence of the firearm but also that he had the power to control it," and Lisby's "furtive movements demonstrate[d] knowledge of guns or contraband located in close proximity"; and (2) most of Lisby's challenges went to the weight, and not the sufficiency of the evidence. **See** Trial Ct. Op. at 6-7.

After a review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Daniel D. McCaffery, we hold that there was sufficient evidence presented to establish beyond a reasonable doubt that Lisby constructively possessed the firearm. Thus, we affirm on the basis of the trial court's opinion, which we adopt and incorporate herein.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/18

FILED

OCT 16 2017

Office of Judicial Records
Appeals/Post Trial

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION-CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA  : PHILADELPHIA COURT
                              : OF COMMON PLEAS
                              : CRIMINAL TRIAL DIVISION
                              :
                    v.        : CP-51-CR-0012318-2015
                              :
                              :
DORMEN LISBY                  :
                              :         CP-51-CR-0012318-2015 Comm v Lisby, Dormen
                              :                       Opinion
                              :

                              8016025701

                    OPINION

**MCCAFFERY, J**

    Dormen Lisby (hereinafter "Appellant") appeals from the judgment of sentence imposed upon him by this Court on February 22, 2017. For the reasons set forth below, it is suggested that the judgment of sentence be affirmed.

**PROCEDURAL HISTORY**

    On November 22, 206, following a waiver trial, this Court found Appellant guilty of Possession of a Firearm Prohibited, pursuant to 18 Pa C.S. § 6105, Carrying a Firearm without a License, pursuant to 18 Pa.C.S. § 6106, Carrying a Firearm on a Public Street, 18 Pa.C.S. § 6106, and Possession of a Firearm with an Altered Serial Number, pursuant to 18 Pa.C.S. § 6110.2. On February 22, 2017, this Court imposed an aggregate sentence of four to ten years' incarceration followed by five years' probation. Appellant thereafter filed a notice of appeal and a court ordered Pa.R.A.P. 1925(b) statement. In his 1925(b) statement, Appellant raises a claim challenging the sufficiency of the evidence.

1

## FACTUAL HISTORY

On November 17, 2015, at about 11:00 p.m., Philadelphia Police Officer Timothy Stephen and his partner Keith White were on routine patrol in the 3600 block of Germantown Avenue in Philadelphia when Officer Stephen observed a dodge Caravan with Delaware plates, the windows of which were heavily tinted making it impossible to see inside the vehicle. (N.T. 10-12) [1] When the Caravan pulled to the curb without the driver using his turn signal the officers activated the emergency lights on their police car and pulled up behind it. (N.T 12-13). Officer White activated the spot lights on top of the police car and directed it at the Caravan. (N.T. 14, 17). However, because of the tint, the officers could only see the silhouettes of the three individuals inside it, two of whom were sitting in the front driver and passenger seats and the third male, identified as Jafiq Barnes, was sitting in the rear of the Caravan. (N.T. 16). From his patrol car, Officer Stephen observed the vehicle rock and saw the silhouettes of the two persons in the front seat moving about in their seats. (N T 17-18). He did not see the silhouette of the person in the rear of the Caravan move at all. (N.T. 18).

Upon observing the foregoing, Officers Steven and White exited their patrol car; Officer Stephen walked up to the front passenger side window of the Caravan and Officer White went to the driver's side window and began speaking to the vehicle's driver, . (N.T. 18). Officer Stephen opened the front passenger door so that he could hear the conversation between the driver and Officer White for his and Officer White's safety. (N.T. 18). When he did so, Officer Stephen observed Appellant sitting in the front passenger seat with a cigar and green leafy material in his lap and a jar in the door pocket, which the officer knew, based on his experience, is used to hold marijuana. (N.T. 19, 31). He also saw a third male sitting on a bench in the far rear of the vehicle, the middle seat of which was missing (N T 19)

---

[1] All references to the record concern the transcript of Appellant's trial held on November 22, 2016.

2

Upon making these observations, Officer Stephen asked Appellant if he had identification and he said he did not (N.T. 120) During the conversation, Appellant moved, which caused the cigar to fall onto the floor of the Caravan (N T 14, 17). Appellant also appeared to become very nervous, his hands began shaking, he started breathing very heavily, and he repeatedly asked Officer Stephen if he was in trouble. (N.T. 20). As he was speaking to Appellant, Officer Stephen noticed a half burned marijuana cigarette in a cup holder in the center console and also detected a strong odor of marijuana inside the vehicle. (N.T. 20).

Based on their observations, the officers concluded that they had enough information to remove the occupants from the Caravan and placed them in the backseat of their patrol car so that they could search the vehicle. (N.T. 20-21). Once the three occupants were secured, the officers returned to the Caravan and began searching it for contraband. In the pocket of a jacket on the seat on which Appellant was sitting, Officer Stephen recovered a .45 caliber FEG hand gun loaded with four or five rounds, one of which was in the chamber. (N.T. 23-24). After recovering the firearm, both Appellant and the driver of the vehicle were taken into custody and the handgun was placed on a property receipt (N T. 24-27).[2]

Jafiq Barnes, who was seventeen years old at the time, spoke to Officer Stephen that evening and told him that he owned both gun found inside the Caravan and that he put one of the guns s under the front passenger seat and the other one under the driver's seat as the officers were approaching the Caravan (N.T. 37-38).

An examination of the 45 caliber handgun revealed that it was operable and that its serial number had been obliterated. (N T 47-48)

In his defense, Appellant called Robert Rachlin as a witness. In the course of working in

---

[2] A second firearm was recovered from behind the radio but Appellant was not charged with any offenses arising out of its recovery (N T 14, 17)

3

a law office as an intern, Mr Rachlin interviewed Jafiq Barnes, who told him that he was sitting in the rear of the Caravan when the police commenced their investigation. (N.T. 73) [3] Mr. Barnes related that when he first got into the Caravan he got into its front passenger seat because Appellant had yet to be picked up and that after Appellant got into the vehicle, he placed a Colt 45 handgun under the front passenger seat and went to the rear of the Caravan. (N.T 73) (N T 73) Finally, Barnes stated to Mr. Rachlin that the 45 caliber handgun recovered by Officer Stephen belonged to him and not Appellant and that the other gun discovered inside the Caravan did not belong to him. (N.T. 73-74).

## DISCUSSION

In his 1925(b) statement, Appellant argues that the evidence was insufficient to sustain each of the convictions because the Commonwealth did not prove that he constructively possessed the firearm found by Officer Stephen inside the jacket laying on the front passenger seat. Appellant presents the following in support of this claim: 1 ) when Appellant was removed from the vehicle the police did not immediately observe the .45 caliber handgun; 2.) another firearm was recovered hidden behind the radio of the Caravan, 3.) the driver of the vehicle attempted to block the police from viewing the spot where the radio was located; 4.) Mr. Barnes told the police that both firearms belonged to him; and 5.) Appellant did not own the Caravan. Appellant's 1925(b) Statement.

In reviewing a claim that alleges that the evidence was insufficient to support a verdict, the Pennsylvania Supreme Court provided the following standard of review:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction... does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt Instead, it must determine simply whether the evidence believed by the fact-finder

---

[3] Jafiq Barnes, also known as Tymir Barnes, refused to testify on Fifth Amendment grounds (N.T 64-68).

4

was sufficient to support the verdict. . [A]ll of the evidence and any inferences drawn therefrom must be viewed in the light most favorable to the Commonwealth as the verdict winner.

The Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden of proof wholly by means of circumstantial evidence Commonwealth v. Duncan, 932 A 2d 226, 231 (Pa. Super. 2007) (citation omitted). A reviewing court may not substitute its judgment for that of the fact finder, and where the record contains support for the convictions, they may not be disturbed Id Lastly, the finder of fact is free to believe some, all, or none of the evidence presented Commonwealth v Hartle, 894 A 2d 800, 804 (Pa. Super. 2006).

Here, because the gun was not found on Appellant's person, the Commonwealth was required to prove that he had constructive possession of the .45 caliber handgun. Commonwealth v. Macolino, 469 A.2d 132, 134 (Pa 1983). To prove constructive possession, the Commonwealth must show that the accused "exercise[d] a conscious dominion over the illegal [contraband ]" Commonwealth v. Valette, 613 A.2d 548, 550 (Pa 1992). Conscious dominion is the "power to control the contraband and the intent to exercise that control." Id., citing Commonwealth v Mudrick, 507 A.2d 1212, 1213 (Pa. 1986). In addition, the Commonwealth may demonstrate that a defendant had joint constructive possession of the firearm, which means that more than one person can have control and access to the contraband. Commonwealth v Davis, 480 A.2d 1035, 1045 (Pa Super. 1984).

Constructive possession can be inferred from the totality of the circumstances. Id. In Commonwealth v Macolino, 469 A 2d 132, (Pa 1983), the court held that "it was reasonable for the fact-finder to conclude that the appellee maintained a conscious dominion over the cocaine found in the bedroom closet which he shared solely with his wife." Id. at 136. Regardless, "the

5

fact that another person may also have control and access does not eliminate the defendant's constructive possession, two actors may have joint control and equal access and thus both may constructively possess the contraband." Commonwealth v Haskins, 677 A.2d 328, 330 (Pa. Super. 1996) (citing Mudrick, 507 A 2d at 1213-14)

Given the totality of the circumstances, it was reasonable for this Court, sitting as factfinder, to find beyond a reasonable doubt that Appellant legally possessed the .45 caliber firearm The firearm was found in a jacket lying on the seat upon which Appellant was sitting when the Caravan was stopped Its location allowed this Court to infer that Appellant not only was aware of the existence of the firearm but also that he had the power to control it. Thus, the evidence was sufficient to sustain the convictions and it is suggested that this claim be deemed lacking in merit See Commonwealth v Smith, 392 A.2d 727, 729 (Pa. Super. 1978) (finding constructive possession based upon proximity where appellant's foot was touching a bag containing drugs and a gun, and distinguishing a second man as involving "equal access" to contraband) Where. as here, a defendant's furtive movements demonstrate knowledge of guns or contraband located in close proximity, constructive possession is properly inferred. Commonwealth v Cruz-Ortega, 539 A 2d 849, 851 n.1 (Pa. Super. 1988) (concluding appellant possessed cocaine found under his seat where he was seen leaning over the seat prior to arrest).

With regard to the factors listed by Appellant in support of his claim that the evidence was insufficient to sustain the charges, they do not render the evidence insufficient and are more appropriate for a weight of the evidence claim In addition, even if applicable to a sufficiency claim, they do not render the evidence insufficient to sustain the charges. The first is of no significance because the gun was inside a jacket and the officers were busy with securing the occupants of the Caravan. The second does not assist Appellant because he was not charged

with possessing that weapon. The third is of no help to Appellant's cause for the same reason. Regarding the fourth ground, this Court deemed Mr Barnes' admission to be incredible because it did not match the testimony of Officer Stephen, who stated that the gun was found on the seat inside a jacket and Barnes' indicated in his various statements that he did not own the second gun **and** that he did own it and put it under the driver's seat and not behind the radio where it was found Finally, because the gun was found on the seat on which Appellant had been seated, the fact that he did not own the Caravan does not render the evidence insufficient.

Accordingly, it is submitted that the evidence is sufficient to sustain the charges

## CONCLUSION

Based on the foregoing, it is respectfully suggested that the judgment of sentence entered in this matter against Appellant be affirmed

BY THE COURT,

Date: 10/16/2017

Daniel D McCaffery, J

7

## CERTIFICATION OF SERVICE

I, James Molinari, Esquire, Law clerk to the Honorable Daniel D. McCaffery hereby certifies that on the 16th day of October, 2017, by first class mail, postage prepaid, a true and correct copy of the attached opinion was served upon the following:

James R  Lloyd , Esquire
One Penn Center- Suite 999
1617 JFK Blvd.
Philadelphia, Pa. 19103

Hugh Burns, Esquire
Chief-Appeals Unit
Office of the Philadelphia
District Attorney
Three South Penn Square
Philadelphia, PA  19107

James Molinari, Esquire