**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James John DALE, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 11, 2003.
Filed Nov. 6, 2003.

Joseph J. Hylan, Public Defender, Norristown, for appellant.

Aliena J. Gerhard, Asst. Dist. Atty., Norristown, for Com., appellee.

Before: STEVENS, KLEIN, and GRACI, JJ.

GRACI, J.

¶ 1 Appellant, James John Dale ("Dale"), appeals from the Judgment of Sentence entered on March 5, 2003, in the Court of Common Pleas of Montgomery County, following his conviction of attempt and conspiracy to commit first degree murder, assault by a prisoner, aggravated assault—attempt to cause serious bodily injury, and aggravated assault—attempt to cause or intentionally or knowingly causing serious bodily injury. After careful review, we affirm.

## I. PROCEDURAL HISTORY

¶ 2 Dale and his co-defendant, Eric Thornton ("Thornton"), were serving New

Hampshire sentences in the Correctional Institution at Graterford, Pennsylvania, pursuant to an Interstate Compact. Dale had been convicted on March 25, 1999 of second degree murder, aggravated assault and sexual assault, arising out of the sexual assault and smothering of a six year old girl. The New Hampshire court imposed a sentence of sixty to one hundred twenty years.

¶ 3 On August 18, 2000, a criminal complaint was filed against Dale, charging him with attempted murder and related offenses. The charges arose out of a criminal episode that occurred on August 14, 2000, in the Graterford prison exercise yard. The Commonwealth alleged that Dale together with Thornton, attempted to murder Jason Selders, another inmate, by cutting his throat.

¶ 4 After a three-day jury trial, Dale was convicted of attempt and conspiracy to commit first degree murder, assault by a prisoner and two counts of aggravated assault. Dale was sentenced to twenty to forty years' incarceration on the attempted murder charge and a consecutive term of eighteen to thirty-six months on the assault by prisoner charge. The aggravated assault charges merged for sentencing purposes.

¶ 5 Dale filed a timely appeal and raises the following issues for our review:

I.   Did the trial court err in concluding that medical records, without more, were sufficient to sustain the verdicts returned on the charges of attempted murder and aggravated assault?

II.  Did the trial court err by denying trial counsel's request to impeach the commonwealth's witness by way of the whole of the witness' criminal history when the witness, in response to the prosecutor's question, said that he was being imprisoned for a drunk-driving conviction?

Appellant's Brief, at 5.

## II. DISCUSSION

¶ 6 First, Dale argues that because the Commonwealth failed to introduce expert medical testimony establishing that the victim was in danger of death or suffered serious bodily injury, the evidence was insufficient to convict him of attempted murder and aggravated assault. Appellant's Brief, at 8–11.

¶ 7 Our standard of review of a sufficiency claim is well settled:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.... When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000) (citations omitted). In conducting our review, we consider all of the evidence actually admitted at trial and do not review a diminished record. *Commonwealth v. Smith*, 523 Pa. 577, 568 A.2d 600, 603 (1989). Keeping in mind our standard of review, we will examine Dale's insufficiency claims.

¶ 8 18 Pa.C.S.A. § 901 defines criminal attempt as follows:

(a) **Definition of attempt.**—A person commits an attempt when with intent to commit a specific crime, he does any act

which constitutes a substantial step towards the commission of the crime.

18 Pa.C.S.A. § 901(a).

¶ 9 A person may be convicted of attempted murder "if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act." *Commonwealth v. Hobson,* 413 Pa.Super. 29, 604 A.2d 717, 719 (1992) (citation omitted); 18 Pa.C.S.A §§ 2501–02. "The intent which is a prerequisite to a finding of murder is 'malice aforethought' or simply, malice." *Id.* at 719–720 (citation omitted). Malice consists "either of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, indicating unjustified disregard for the probability of death or great bodily harm." *Id.* at 720 (citations omitted). "Malice is the distinguishing factor between murder and the lesser degrees of homicide." *Commonwealth v. Seibert,* 424 Pa.Super. 242, 622 A.2d 361, 364 (1993) (citation omitted). "A jury may properly infer malice from the use of a deadly weapon on a vital part of the victim's body." *Id.* (citations omitted).

■ ¶ 10 Several witnesses testified regarding Dale's intention to kill Selders and the substantial steps he took toward accomplishing Selders' murder. Timothy Tout, cell-mate of Dale's co-conspirator, Eric Thornton, testified that Selders was causing problems because he was telling the other inmates that Thornton and Dale were snitches. Their plan was to, "shut his mouth" by slitting Selders' throat while he was lifting weights. N.T. 12/10/02, at 33–40. Tout said that Thornton showed him the razor, melted into the end of a toothbrush, that they intended to use as the murder weapon. *Id.* at 37. Tout further testified that he was in the prison yard at the time of the attempted murder, and saw both Dale and Thornton next to Selders while he was lifting weights. Tout observed Thornton shake something in his hand and reach across and cut Selders' throat. Tout then saw Dale drop his weight, pull a sock full of batteries out of his back pocket or waist and hit Selders on his shoulder. After Selders ran for help, Tout watched Thornton and Dale walk to the back of the yard and wash their hands and sneakers in a puddle. *Id.* at 41–43.

¶ 11 William Grow, Dale's cellmate, was also in the prison yard at the time of the incident and confirmed Tout's description of the events in the yard. Grow testified that he walked into the prison yard with Dale, and Thornton joined them. At that point, he overheard Dale tell Thornton "We'll get him when he comes out to the yard." *Id.,* at 92–93. Thornton replied, "Well, wait until he gets out on to the benches." *Id.,* at 93. Grow then observed Thornton give something to Dale, which Grow guessed was a knife, and told Dale to put it under the top bench. At that point, Grow testified that Dale waived him, "Yo, homey, I don't think this is a good night for you to hang out with us." *Id.,* at 94. Grow said that he walked away and shortly thereafter heard the dumbbells drop to the ground, turned and saw Dale trying to hold Selders down when Selders tried to get off the bench. *Id.* at 95–97. Grow also testified about Dale's reaction to the incident, and the conversation he had with Dale when they were locked in their cell immediately following the incident. Grow described Dale as, "crazy eyed" and further observed that Dale "was all excited like. I don't know, a kid that just got a new toy or something." *Id.* at 99. Grow said that Dale looked at him and said, "Yeah, well he had it coming[.] ...They'll be coming to get me pretty soon, if he lives. He shouldn't make it, though, because we got his jugular vein." *Id.* at 99–100.

¶ 12 Jason Selders, the victim also testified at trial regarding the events of that day. Selders said that Dale loaned him his gloves and offered to spot for him, immediately prior to the incident. *Id.* at 154. Selders further testified:

So I used his gloves and went over, and I laid down on the bench and started to do my bench presses, and we were just talking, you know, like every other day. Then when I had the weights up above my head, James Dale jumps on my side here, on my left leg, right in here, he jumped on me and at the same time Eric Grabbed by head and pulled it back. And he come around and I seen the shiny something, and he come around and cut my throat.

Then I got up and took off, and James Dale hit me in the back with something. So I turned around and went like that (Indicating) to get him off me, and I seen him . . . .

I don't know how long it was, maybe a minute, Lieutenant Campbell come in, came flying down the corridor, grabbed a towel and put it around my neck. At that time I thought I was dead. I was light-headed and I was having trouble walking. Lieutenant Campbell carried me, along with me walking a little bit, towards the end of the block. On the way by I told him who did it, because I thought I was dying. I told him it was the two guys from New Hampshire. I didn't know Eric's last name, but I know it was Eric, and told him James Dale and the other guy from New Hampshire so he knew who did it, because in my mind I was dead. My throat was cut. I thought I was done.

*Id.* at 154–156.

¶ 13 The above testimony more than adequately demonstrates Dale's intent to murder Selders, and the substantial steps he took toward the accomplishment of his objective. We agree with the finding of the trial court that the evidence was sufficient to prove attempted murder beyond a reasonable doubt. Dale cited no authority for his argument that expert medical testimony was needed to prove that the wounds inflicted by Dale, if left untreated would have caused Selders' death, and, like the trial court, we found none. *See, Commonwealth v. Donton,* 439 Pa.Super. 406, 654 A.2d 580 (1995) (affirmed conviction of attempted murder that was supported by evidence of intent to kill, and proof of substantial steps taken to cause death, regardless of evidence that defendant did not aim or fire gun at intended victim and no injury occurred). We agree with the learned trial court's analysis that, "[s]ince proof of actual bodily harm is unnecessary to establish the offenses of which Mr. Dale was convicted, expert testimony concerning the harm cannot be required." Opinion, 6/19/03, at 6. Therefore, Dale's first claim regarding the insufficiency of the evidence for attempted murder must fail.

¶ 14 Similarly, Dale argues that without expert medical testimony regarding the seriousness of the bodily injury incurred by Selders, the evidence was insufficient to convict him of aggravated assault. Appellant's Brief, at 9. The conviction for aggravated assault, being a lesser included offense, is supported by the same facts which support Dale's conviction for attempted murder, since the elements of aggravated assault are necessarily included in the offense of attempted murder and merge with it for sentencing purposes. 18 Pa.C.S.A. §§ 2301 and 2702(a)(1); *Commonwealth v. Anderson,* 538 Pa. 574, 650 A.2d 20 (1994). Therefore, having determined that there was sufficient evidence for the fact finder to conclude that each element of the offense of attempted murder has been proven beyond a reasonable doubt, we also conclude that there was

sufficient evidence for the fact finder to conclude that each element of aggravated assault has been proven beyond a reasonable doubt. Thus, Dale's claim regarding the insufficiency of evidence for aggravated assault must also fail.

■ ¶ 15 Finally, Dale claims that the trial court erred when it refused to permit him to cross-examine a Commonwealth witness regarding prior convictions that were not *crimen falsi* convictions. Dale argued that without being able to cross-examine Grow, Thornton's cell-mate, regarding his convictions for rape and escape, the jury would have been left with the incorrect impression that Grow's criminal history was "relatively benign," when in fact Grow was, "a vicious felon who, according to the prosecutor, had spent half his life in various penal institution[s]." Appellant's Brief, at 12–13.

¶ 16 This Court has found that crimes involving dishonestly or false statement which occurred within ten years of the trial date are *per se* admissible. *Commonwealth v. Vitale*, 445 Pa.Super. 43, 664 A.2d 999, 1002 (1995) (citation omitted). However, this Court has also found that sexual offenses, such as rape and prostitution, are not *crimen falsi* crimes and, therefore, convictions for sexual offenses may not be used to impeach the credibility of a witness. *Id.*, at 1003 (citation omitted). Dale was unable to find any support for his argument that the crime of escape is a *crimen falsi* crime, Appellant's Brief, at 13, and we also found none. Moreover, we fail to see how escape meets the requirements for a crime of *crimen falsi*. We find no error in the trial court's refusal to permit Dale to cross-examine Grow regarding his escape conviction.

¶ 17 This Court has held that the admission of prior convictions for impeachment is within the discretion of the trial judge, and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. McEnany*, 732 A.2d 1263, 1270–1271 (Pa.Super.1999).

■ ¶ 18 We agree with the opinion of the trial court that it, "did not commit 'error' by limiting impeachment of Mr. Grow to all his prior *crimen* falsi convictions". 1925(a) Opinion, at 8. In its 1925(a) Opinion, the trial court set forth its rationale for refusing to allow Dale to impeach the Commonwealth's witness by cross-examining him regarding convictions for offenses that were not *crimen falsi*, saying:

[D]efendant asserts we "erred" by denying his request to cross-examine witness William Grow regarding his entire criminal record, after he testified that he was in prison for "DUI". Mr. Grow was serving his sentence in a State Correctional Institution because it was committed while he was under supervision of the State Parole Board. At the time his testimony was given the maximum term of the state sentence had expired. The Commonwealth moved to preclude evidence that he was then a prisoner. We denied that motion. The defense argued that the alleged minor nature of the offense of driving while intoxicated required us to inform the jury of Mr. Grow's *entire* criminal record, including his convictions for statutory rape, incest and corruption of minors. Those offenses are not *crimen falsi*, and therefore not the basis for impeachment. We did allow evidence of all of Mr. Grow's *crimen falsi* convictions, even though the sentences for several had been served more than ten years before the trial. Several of these convictions dated from the early 1970s.

The offenses which the defendant wished to place before the jury would have done no more than show Mr. Grow was a bad person. This is not proper impeachment. Serving a conviction for

driving under the influence hardly qualifies someone as being either honest or relatively less dishonest than the average state prisoner.

Opinion, 6/19/03, at 7.

### III. CONCLUSION

¶ 19 For the reasons set forth above, we find the evidence sufficient to sustain Dale's convictions for attempted murder and aggravated assault and we find no abuse of discretion in the learned trial court's limitation on the cross-examination of a Commonwealth witness to *crimen falsi* convictions.

¶ 20 Judgment of sentence affirmed.