J-A10043-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                     :              PENNSYLVANIA
                                     :
             v.                         :
                                     :
                                     :
SHANNON M. MATTHEWS           :
                                     :
              Appellant         :    No. 671 EDA 2017

Appeal from the Judgment of Sentence January 18, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0003008-2015

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY RANSOM, J.:                  **FILED MAY 30, 2018**

Appellant, Shannon M. Matthews, appeals from the judgment of sentence of twenty-four to forty-eight years of confinement followed by five years of probation, imposed January 18, 2017, after a jury trial resulting in her convictions for murder of the third degree, aggravated assault, and endangering the welfare of children – parent/guardian/other commits offense.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  **See** Trial Court Opinion, 6/20/17, at 1-4.  Therefore, we have no reason to restate them.

Appellant raises one issue for our review:

---

[1] 18 Pa.C.S. §§ 252(c), 2702(a)(1), and 4304(a)(1).

*   Retired Senior Judge assigned to the Superior Court.

1. Was the evidence insufficient to support [Appellant]'s convictions for murder of the third degree and aggravated assault?

Appellant's Brief at 2.

In reviewing the sufficiency of the evidence, our standard of review is as follows:

Whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. . . . Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Fortson*, 165 A.3d 10, 14–15 (Pa. Super.) (citation and internal brackets omitted) (some formatting applied), *appeal denied*, 174 A.3d 558 (Pa. 2017).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable James F. Nilon, Jr., we conclude that Appellant's challenge to the sufficiency of the evidence merits no relief. The trial court opinion comprehensively discusses and properly disposes of that question. *See* Trial Court Opinion, 6/20/17, at 5-20 (finding (1) the evidence was sufficient as a matter of law to sustain Appellant's convictions for murder of the third degree and aggravated assault, because the evidence established that: (a) the inflicted injuries – which occurred over a period of time through multiple beatings and which were fatal in combination, although no one injury was lethal – together with the denial of medical care caused the victim's death, (b) the victim exhibited no signs of

- 2 -

injury prior to being in Appellant's custody, (c) Appellant had the opportunity to inflict the injuries in question, and (d) the Commonwealth established the requisite malice; and (2) Appellant's substantive and procedural due process rights were not violated). Accordingly, with respect to Appellant's sole issue on appeal, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/30/18

ORIGINAL

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| COMMONWEALTH OF PENNSYLVANIA | 671 EDA 2017 |
|---|---|
| v. | NO. CP-23-CR-0003008-2015 |
| SHANNON M. MATTHEWS | |

John F. X. Reilly, Esquire; Attorney for the Commonwealth
Todd M. Mosser, Esquire; Attorney for the Appellant

## OPINION

NILON, J.                                                          FILED: 6/16/17

Shannon M. Matthews, hereinafter "Appellant," argues that she is entitled to relief after a jury found her guilty of Third Degree Murder, Aggravated Assault, and Endangering the Welfare of Children. Appellant raises seven issues on appeal, including: insufficiency of the evidence, failure to prove malice and causation, weight of the evidence, unavailability of a witness, and "inadmissible" character evidence. Appellant's contentions are meritless.

### FACTUAL HISTORY:

On Tuesday, February 3, 2015, the Norwood Borough Police Department and emergency medical responders were dispatched to a physician's office, where Appellant was then employed. (N.T. 12/6/16, pp. 125-26). Appellant was also living in an apartment located above the physician's office. (N.T. 12/6/16, p. 127). Upon arrival, police and paramedics saw M.H., the two-year-old son of Appellant, unresponsive and being administered CPR by Dr. Patricia Sutton. (N.T. 12/6/16, pp. 126, 180). Paramedics took over CPR efforts on the child, who was cold to the touch. (N.T. 12/6/16, p. 180; N.T. 12/7/16, p. 157). M.H. was transported to Taylor Hospital,

1

where he was pronounced dead less than 30 minutes after arriving. (N.T. 12/6/16, p. 127; N.T. 12/7/16, p. 174). The emergency department physician who treated the child observed numerous bruises to his head, face, torso, genitals, and extremities. (Exhibit C-19, Taylor Hospital medical records, 2/3/15).

Appellant's boyfriend and co-defendant, Daniel Grafton, was arrested the same night and charged with Aggravated Assault and related offenses. (Affidavit of Probable Cause, 4/10/15). During the course of the investigation into the child's death, Appellant gave three separate, recorded, voluntary statements to investigators, and each time denied any responsibility for M.H.'s death. (N.T. 12/6/16, pp. 217-96). Appellant implicated Grafton in the killing and suggested that Grafton may have overdosed M.H. with drugs. (N.T. 12/6/16, p. 219). The Medical Examiner determined the manner and cause of death to be homicide due to multiple blunt force traumas. (N.T. 12/7/16, p. 320). Additional charges, including Third Degree Murder, were then filed against Grafton. (Criminal Complaint, 4/14/15). Charges against Appellant of Third Degree Murder, Aggravated Assault, and related offenses were filed on April 16, 2015. (Criminal Complaint, 4/14/15).

At trial, evidence was elicited to demonstrate that M.H. sustained numerous injuries, both internal and external, resulting from repeated blunt force trauma. (N.T. 12/7/16, pp. 253-313). The Medical Examiner's opinion was that the injuries were sustained over a period of days, in several separate beatings. (N.T. 12/7/16, p. 331). Three medical experts, called by both the Commonwealth and the Defense, agreed that no individual injury was lethal, and that M.H. likely would have survived if he had been given medical attention. (N.T. 11/29/16, p. 64; N.T. 12/7/16, pp. 320-21; N.T. 12/8/16, p. 302). Subsequent evidence at trial showed that Appellant refused Grafton's request to take M.H. to the hospital two days prior to his death, and that both

2

Appellant and Grafton deliberately refused to allow a caseworker from Children and Youth Services to see M.H. the day before his death. (N.T. 12/8/16, pp. 122-23, 131). Though M.H. was declining in physical health and clarity over the course of three days, Appellant never sought medical or other assistance for him.

In December of 2016, Grafton and Appellant stood trial jointly. After a week-long jury trial, Grafton was acquitted of the murder and assault charges and found guilty of Endangering the Welfare of Children for his role in failing to seek medical attention for M.H. when Appellant refused to do so. Appellant was found guilty of Third Degree Murder, Aggravated Assault, and Endangering the Welfare of Children, but acquitted of Conspiracy of Third Degree Murder. She was sentenced on January 17, 2017.

## PROCEDURAL HISTORY:

Appellant was charged on April 16, 2015, with Third Degree Murder[1], Simple Assault[2], Aggravated Assault[3], Endangering the Welfare of Children (Parent/Guardian Commits Offense)[4], Endangering the Welfare of Children (Preventing/Interfering with Making Report)[5], Involuntary Manslaughter[6], and Conspiracy- Third Degree Murder[7]. Appellant was formally arraigned on June 16, 2015. Trial counsel, Joseph D'Alonzo, Esquire, entered his appearance on behalf of Appellant on July 20, 2015.

On September 29, 2015, Appellant filed an Omnibus Pretrial Motion, including a Motion to Suppress regarding three statements made by Appellant to police. A hearing on the Motion to Suppress was held on October 15, 2015. On November 17, 2015, Appellant filed a

---

[1] 18 Pa. C. S. § 2502(c)
[2] 18 Pa. C. S. § 2701(a)(1); withdrawn.
[3] 18 Pa. C. S. § 2702(a)(2)
[4] 18 Pa. C. S. § 4304(a)(1)
[5] 18 Pa. C. S. § 4304(a)(2); withdrawn.
[6] 18 Pa. C. S. § 2504(a); dismissed following guilty verdict of Third Degree Murder.
[7] 18 Pa. C. S. § 903

3

Memorandum of Law in Support of the Motion to Suppress. The Commonwealth also filed a Memorandum of Law. This court issued detailed Findings of Fact and Conclusions of Law and denied the Motion to Suppress on December 22, 2015.

After a five-day jury trial, Appellant was convicted of Third Degree Murder, Aggravated Assault, and Endangering the Welfare of Children on December 9, 2016; she was acquitted of the charge of Conspiracy to Commit Third Degree Murder. Appellant filed a Motion for Judgment of Acquittal on December 19, 2016 and was subsequently denied on December 21, 2016.

On January 18, 2017, Appellant was sentenced to 20-40 years for Third Degree Murder; 4-8 years for Aggravated Assault; and 5 years' probation, to run consecutively. Appellant filed a timely Post-Sentence Motion on January 20, 2017, requesting a new trial on the grounds that the evidence was insufficient to support the verdict as a matter of law and that the verdict was against the weight of the evidence. This Motion was denied on January 27, 2017. On February 16, 2017, Appellant filed a timely Notice of Appeal to the Superior Court. Consequently, this Court directed Appellant to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) and Appellant filed a Concise Statement of Errors Complained of on Appeal raising the following issues for appellate review:

1. The evidence was insufficient as a matter of law to sustain a conviction of Third Degree Murder because the Commonwealth failed to prove malice:

2. The evidence was insufficient as a matter of law to sustain convictions of Third Degree Murder and Aggravated Assault because the evidence only showed she had the opportunity to commit such;

3. Appellant's convictions of Third Degree Murder and Aggravated Assault violate her substantive and procedural Due Process Rights

4

because malice and causation were not proven beyond a reasonable doubt;

4. The evidence was insufficient as a matter of law to sustain a conviction of Aggravated Assault because the Commonwealth's evidence failed to establish causation in that the Medical Examiner's opinion failed to establish that the injuries occurred at a time when the child was in the Appellant's custody;

5. In the alternative, Appellant argues that her convictions of Third Degree Murder and Aggravated Assault are against the weight of the evidence because the Commonwealth failed to establish causation;

6. The Court of Common Pleas erred in allowing witness Charles Albert's preliminary testimony to be read to the jury because Mr. Albert should not have been declared "unavailable" for purposes of the exception to the hearsay rule; and

7. The Court of Common Pleas erred in overruling Defense's objection to the Commonwealth's question of Mr. Grafton, in which the Commonwealth sought to elicit that Mr. Grafton relied on Appellant's "truthfulness," as the question called for inadmissible character evidence where the same was not first put at issue by Appellant.

## DISCUSSION:

I.   **Appellant argues she is entitled to relief because the evidence is insufficient as a matter of law to sustain a conviction for Third Degree Murder.**

The first issue raised by Appellant for appeal is one of alleged insufficiency of the evidence as a matter of law. Specifically, she contends that (1) the Commonwealth failed to establish the causation of M.H.'s death because the Medical Examiner's report fails to establish concretely when the mechanism of death occurred; (2) the Commonwealth failed to establish causation because the Medical Examiner's report does not identify which injuries led to the condition that caused death; (3) the Commonwealth failed to establish causation because the Medical Examiner conceded that the unidentified injuries that led to death could have been

5

inflicted during a time when M.H. was not in Appellant's custody; and (4) the Commonwealth, in failing to establish the aforementioned, also failed to establish the requisite malice needed to sustain a conviction for Third Degree Murder, and therefore the jury's inference of the same was based on improper speculation.

### Standards Governing Sufficiency of the Evidence

A claim challenging the sufficiency of the evidence is a question of law. *Commonwealth v. Strouse*, 909 A.2d 368 (Pa. Super. 2006); *Commonwealth v. Dale*, 836 A.2d 150 (Pa. Super. 2003). When reviewing a challenge to the sufficiency of the evidence to support a conviction, the court must determine whether the evidence was sufficient to enable the finder of fact to find every material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt, viewing the evidence and the reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Strouse, supra; Commonwealth v. Dale, supra. See also Commonwealth v. McCloskey*, 835 A.2d 801 (Pa. Super. 2003); *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745 (2000).

Furthermore, the Commonwealth may sustain its burden by proving the elements of the offense with evidence which is entirely circumstantial and the finder of fact, who determines credibility of witnesses and the weight to give evidence produced, is free to believe all, part, or none of the evidence. *Commonwealth v. Jette*, 818 A.2d 533, 534 (Pa. Super 2003).

The Superior Court may not substitute its judgment for that of the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910 (Pa. Super. 2000). If the fact finder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed to support the verdict. *Commonwealth v. Wood*,

6

637 A.2d 1335 (Pa. Super. 1994). The standard applies equally to cases in which the evidence is circumstantial, rather than direct, as long as the evidence as a whole links the accused to the crime charged beyond a reasonable doubt. *Commonwealth v. Hardcastle*, 519 Pa. 236, 546 A.2d 1101 (1988); *Commonwealth v. Swerdlow*, 636 A.2d 1173 (Pa. Super. 1994). Additionally, mere conflicts in the testimony of the witnesses do not render the evidence insufficient. *Commonwealth v. Moore*, 648 A.2d 331 (Pa. Super. 1994). Issues of credibility are left to the finder of fact, who is free to accept all, part, or none of a witness's testimony. *Commonwealth v. Johnson*, 542 Pa. 384, 668 A.2d 97 (1995); *Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548 (1992); *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621 (1995); *Commonwealth v. Kelley*, 664 A.2d 123 (Pa. Super. 1995); *Commonwealth v. Lytle*, 444 Pa. Super. 126, 663 A.2d 707 (1995). Questions of doubt are for the finder of fact, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the totality of the circumstances. *Commonwealth v. Cassidy*, 668 A.2d 1143 (Pa. Super. 1995); *Commonwealth v. Govens*, 632 A.2d 1316 (Pa. Super. 1993), *alloc. den.*, 539 Pa. 675, 652 A.2d 1321 (1994). Only when the evidence offered to support the verdict is in contradiction to the physical facts, or in contravention to human experience and the laws of nature, can the evidence be considered insufficient as a matter of law. *Commonwealth v. Widmer, supra.*

The appellate courts in Pennsylvania have articulated a well-settled test for reviewing sufficiency of the evidence claims:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by

7

the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Baker*, 72 A.3d 652, 657-58 (Pa. Super. 2013) (quoting *Commonwealth v. Knox*, 50 A.3d 749, 754 (Pa. Super. 2012), appeal granted on other grounds, 68 A.3d 323 (Pa. 2013)). Furthermore, "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction ... does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis added).

Appellant was convicted of Third Degree Murder under 18 Pa. C. S. § 2502(c), defined as murder which is not committed as an intentional killing or committed while defendant was engaged in perpetration of a felony. "Intentional killing" is defined as "killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." *Id.* "Perpetration of a felony" is defined as "the act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping." *Id.*

Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence shows that Appellant repeatedly, over the course of multiple days, beat M.H. and subsequently

8

denied him medical care. The evidence also shows that the denial of medical care, coupled with the inflicted injuries, led to M.H.'s death.

### A. Appellant argues that the Commonwealth failed to establish causation of death in that the Medical Examiner's report failed to establish when the mechanism of death occurred.

As noted above, the Commonwealth can present its case circumstantially, leaving the finder of fact to decide what weight and credibility to give what evidence and witnesses. *Jette*, 818 A.2d at 534.

The evidence presented by the Commonwealth demonstrated that the injuries leading to M.H.'s death were inflicted over a period of time, through multiple beatings. (N.T. 12/7/16, pp. 327, 331). The Medical Examiner testified that the physical evidence with which he was working suggested that the bruising present on M.H. likely occurred over the course of at least three days. (N.T. 12/7/16, p. 331). M.H. was returned to the custody of Appellant on the morning of Friday, January 30, 2015, with reports from his father and grandmother that there was no evidence of injury. (N.T. 12/6/16, pp. 78, 130). The Commonwealth also established that there was no evidence of injury to M.H. as of Friday afternoon, January 30, when he was last seen by daycare teachers. (N.T. 12/5/16, pp. 175, 196). Testimony from co-defendant Grafton showed that he did not see M.H. from the evening of Friday, January 30 until the evening of Sunday, February 1, with Appellant having elected not to attend a bowling outing on Friday because "M.H. was not feeling well." (N.T. 12/8/16, pp. 110-14). When Grafton saw M.H. on Sunday night, he was bruised unlike Grafton had ever previously seen. (N.T. 12/8/16, p. 114).

The expert witness for the defense, Dr. Jonathan Arden, did not dispute the Commonwealth's evidence that M.H. was the victim of child abuse or that his injuries led to his death; in fact, he agreed to as much. (N.T. 12/8/16, pp. 277-79, 302). Dr. Arden disagreed

9

slightly with the Medical Examiner's determination of the age of the bruising. Where the Medical Examiner dated the bruises as being inflicted about 72 hours before death, Dr. Arden ranged their infliction at two to seven days prior to death, with the largest bruises around 72 hours prior to death. (N.T. 12/7/16, p. 286; N.T. 12/8/16, p. 272). The Appellant had custody of M.H. from Friday morning, four days prior to his death, up until he died. From the information adduced from both sides' experts at trial, the jury could, and did, reasonably conclude that the injuries which caused M.H.'s death were inflicted when she had custody, despite the fact that the Medical Examiner's report cannot determine concretely when the mechanism of death occurred.

Further, the Commonwealth produced evidence that, if M.H. had received medical care after the infliction of his injuries, he likely would have survived. (N.T. 11/29/16, p. 64; N.T. 12/7/16, pp. 320-21). Over the course of the weekend preceding M.H.'s death, the Appellant had opportunity to seek medical care for M.H. and repeatedly failed, or deliberately prevented others, to do so. Dr. Elcock-Messam, the pediatric expert for the Commonwealth, discussed the significance of Appellant's previous phone calls to M.H.'s pediatrician for questions of routine ailments, but that there was no evidence of a phone call when M.H. would have been in visible distress with the injuries he received. (N.T. 11/29/16, p. 102). Appellant lived above, and worked for, a physician. Children and Youth Service (CYS) caseworker Charles Albert testified that he went to Appellant's residence one day before M.H.'s death for a follow-up related to a previous incident and got no response, despite having an appointment. (N.T. 12/6/16, p. 96). Co-defendant Grafton testified that he was not told until the very last minute that CYS would be coming by and that Grafton was suspected of the previous incident for which the caseworker was doing a follow-up; he stated that this made him suspicious. (N.T. 12/7/16, p. 122). Grafton also testified that he discussed M.H. needing to see a doctor and that Appellant told him she had made an

10

appointment for Wednesday, February 4. (N.T. 12/7/16, p. 131). Because Grafton was under the impression a doctor's appointment was in place, he did not make one or take M.H. himself. (N.T. 12/7/16, p. 131). There is no evidence to indicate any such appointment was made, but significant evidence that Appellant failed to utilize the various sources of help available.

> B.    **Appellant argues that the Commonwealth failed to establish causation because the Medical Examiner's report does not identify which injuries led to the condition that caused death.**

Factual questions which are in doubt are left to the finder of fact to decide, except where the evidence is overwhelmingly weak. *Cassidy, supra,* 477 Pa. Super at 192. As noted above, the court in *Widmer, supra,* held that the evidence is only insufficient as a matter of law when it is contradictory to physical facts, human experience, and the laws of nature. 560 Pa. at 308.

In the case in question, three separate medical experts opined that no one injury was fatal, but it was the combination of the multiple injuries inflicted and the lack of medical care that killed M.H.. (N.T. 11/29/16, p. 64; N.T. 12/7/16, pp. 320-21; 12/8/16, p. 261). These experts represent both the Commonwealth and the Defense in this agreement. Though the Medical Examiner's report does not concretely establish which injury or injuries led to the ultimate condition which caused death, there is sufficient circumstantial evidence for a jury reasonably to conclude that the series of injuries, which occurred while M.H. was in Appellant's care, led in their totality to his death. As established in *Jette, supra,* the jury can believe all, part, or none of the evidence presented in making its conclusion. 818 A.2d at 534. The jury believed that the evidence presented was sufficient to make a rational decision beyond a reasonable doubt and did so.

11

C.      **Appellant argues that the Commonwealth failed to establish causation because the Medical Examiner conceded that the unidentified injuries that led to death could have been inflicted during a time when the child was not in Appellant's custody.**

Similarly to Section IB above, the jury is permitted to draw its conclusion based on circumstantial evidence so long as the evidence is reasonable. In this case, the medical experts established that the injuries which caused the bruising occurred between two and seven days prior to M.H.'s death, with approximately three days being the general consensus. (N.T. 12/7/16, pp. 286, 297; N.T. 12/8/16, p. 272). It was established through the testimony of Paul Hunt, Barbara Baltsukonis, and co-defendant Grafton, that M.H. was with, alone or otherwise, Appellant from the Friday preceding his death until the morning of the day he died, and that he was completely alone with her from Saturday morning until Sunday evening. (N.T. 12/5/16, pp. 78-79, 130-32; N.T. 12/8/16, pp. 110-13).

Though the Medical Examiner conceded that the injuries could have been inflicted on Thursday, at a point when M.H. was with his father and grandmother, both of those individuals and the day care teachers reported no evidence of injury, bruising, or any sort of malaise on Friday. (N.T. 12/7/16, p. 327; N.T. 12/5/16, pp. 79, 130, 175, 196). From this information, the jury could infer, within the realm of reasonableness and to a certainty of beyond a reasonable doubt, that the injuries occurred during the period of time when M.H. was in Appellant's custody and not during some other time, though that possibility did exist. There was sufficient evidence, albeit circumstantial, to narrow down the timeframe of the infliction of injuries to being most likely to have had occurred Friday night to Saturday morning, with some reasonable belief that they occurred as late as Saturday night. Additionally, the Medical Examiner testified that the

12

beatings likely occurred over the course of three days, which lends more weight to the belief that the injuries were inflicted when Appellant was in control. (N.T. 12/7/16, p. 331).

> D. **Appellant argues that the Commonwealth, in failing to establish the preceding facts, also failed to establish the requisite malice to sustain a conviction for Third Degree Murder and the jury's inference of the same was based on improper speculation.**

The jury was instructed as to the elements of Third Degree Murder using the Pennsylvania Suggested Standard Criminal Jury Instructions 15.2502C (2016). Under these instructions, malice is shown "if the perpetrator's actions show his or her wanton and willful disregard of an unjustified and extremely high risk that his or her conduct would result in death or serious bodily injury to another." (N.T. 12/9/16, p. 138). In *Commonwealth v. Miller*, 627 A.2d 741 (Pa. Super. 1993), the Superior Court of Pennsylvania held. that proof of the defendant's intent to kill her infant daughters was not necessary to prove malice; it was only necessary to prove that the defendant consciously disregarded an extreme risk of injury to another. In that case, the defendant was charged with Third Degree Murder in the deaths of her seven-month old twins after they were discovered dead, having died of dehydration and malnutrition. *Id.* at 414. The defendant was convicted, and on appeal raised, *inter alia*, the argument that the Commonwealth failed to prove her malice beyond a reasonable doubt; her argument centered on the fact that her children died as a result of her negligence, but she did not intend to hurt them. *Id.* The court in *Miller* discussed the definition of malice, also noting that the actor need not intend another to be injured. *Id.* at 416. *See Commonwealth v. Drum*, 58 Pa. 9, 15 (1868); *see also Commonwealth v. Young*, 494 Pa. 224, 431 A.2d 230 (1981).

Other cases have upheld convictions of Second and Third Degree Murder where there is no evidence of intentional action to harm but significant, though circumstantial, evidence of the

13

disregard of the welfare of others resulting in death. For example, in *Commonwealth v. Taylor*, the defendant was convicted of Second Degree Murder for striking and killing a child with his car while driving under the influence of alcohol. 461 Pa. 557, 337 A.2d 545 (1975). There, the court did not have any direct evidence to show the defendant's reckless disregard for the safety of the boys he hit, such as testimony that he said his intent was to do so, but there was significant circumstantial evidence. The court discussed the use of the defendant's intoxicated state, rate of speed, distance of bodies and bicycles from the point of impact, and knowledge of the presence of children in the area to prove malice circumstantially. *Id.* at 564.

The instant case is similar in ways to both *Miller* and *Taylor*. The Commonwealth has not set out to prove that Appellant intended to kill M.H., but it has proven that her actions resulted in his death and were done with a disregard for his life. Malice in this case is, as in *Taylor*, circumstantially evident. The nature of the injuries- large bruises over most of his body; 128 individual bruises counted; a liver laceration; free blood in the abdominal cavity- this is in itself evidence of malice and disregard for life. (N.T. 12/7/16, pp. 271-83). Further evidence of an "unjustified risk" to M.H.'s life is in the lack of medical care. The Commonwealth argued in its closing statement the numerous avenues through which Appellant had access to medical care for M.H.: her employer, her coworker, M.H.'s pediatrician, the visit from CYS, or even taking M.H. to daycare could have resulted in M.H. getting care which may have saved his life. (N.T. 12/9/16, p. 110).

There is also evidence in this case that Appellant hated M.H. There was testimony from an acquaintance of Appellant that Appellant repeatedly offered to give M.H. to her. (N.T. 12/5/16, p. 221). The same acquaintance, as well as another, also testified that Appellant "hated" M.H., "hate" being Appellant's word. (N.T. 12/5/16, pp. 220-23, 239). A third acquaintance

14

testified to Appellant's animus toward M.H. (N.T. 12/6/16, pp. 108-10, 173-76). There were text messages adduced reading to that effect (from Appellant to Grafton, regarding M.H.: "... I almost did something really bad [t]o him..."). (N.T. 12/7/16, p. 198). In addition, Appellant referred to M.H. as her "Suboxone baby." (N.T. 12/5/16 pp. 220, 222). Appellant prevented the CYS caseworker from conducting his visit the day before M.H. died, prevented him from seeing M.H.'s condition, and prevented him from getting M.H. care. (N.T. 12/6/16, pp. 96-97; N.T. 12/8/16, pp. 122-23).

The administration of the blows alone is evidence of malice in this case; it is a reasonable inference that the perpetrator of M.H.'s injuries was acting with a willful disregard of an extremely high risk of death. Finally, Grafton asked Appellant about taking M.H. to a doctor, and Appellant responded by telling him there was a future appointment in place, which was false. (N.T. 12/8/16, p. 110). This statement prevented Grafton from seeking care independently.

All of the evidence elicited at trial showing the above information, in conjunction with the law as it was explained to the jury regarding malice, shows that the Commonwealth met its burden to prove Appellant acted with malice. Together with Sections IA-IC, it is clear that the evidence was sufficient to sustain a conviction for Third Degree Murder.

II.    Appellant argues the evidence was insufficient as a matter of law to sustain convictions for Third Degree Murder and Aggravated Assault because the evidence only showed that she may have had the opportunity to inflict the injuries in question, and that is not sufficient to sustain her conviction.

It is well established that circumstantial evidence is just as strong as, and sometimes stronger than, direct evidence. *Commonwealth v. Cedeno*, 2015 WL 6874800 (Pa. Super. 2015) (citing *Commonwealth v. Wentzel*, 61 A. 2d 309, 312 (Pa. 1948)). It is also well established that a case can be made wholly on circumstantial evidence. *Id.*; *Jette, supra*, 818 A.2d 533.

15

Additionally, as discussed above in the Standards Governing Sufficiency of the Evidence, the test is based on the facts and *all reasonable inferences* which can be drawn from those facts. *Strouse, supra*, 2006 Pa. Super. 273; *Dale, supra*, 2003 Pa. Super. 413. (emphasis added).

Here, the facts showed that Appellant was with M.H., alone, at times when she would have been able to inflict the injuries which led to his death. A reasonable inference which can be drawn from this is that she was the perpetrator of the injuries. Based on the above standard, the evidence showing that she had the opportunity, at a time that matches when the injuries were believed to have been inflicted, and leading to a reasonable inference that she was the perpetrator is sufficient to sustain the convictions because that is exactly the standard set forth in *Strouse* and *Dale*. Appellant's argument on this subject has no merit.

III. **Appellant argues her convictions for Third Degree Murder and Aggravated Assault violate her substantive and procedural Due Process rights, as the requisite malice and causation needed to sustain her convictions were not proven beyond a reasonable doubt.**

Procedural Due Process is afforded to an individual when she has had adequate notice of the charges against her and the penalties she may face, the opportunity to be heard, and the chance to defend herself in front of a fair and impartial tribunal. *Commonwealth v. Wright*, 961 A2d. 119, 132 (Pa. 2008); *Commonwealth v. Thompson*, 281 A.2d 856 (Pa. 1971); *See, e.g., Commonwealth v. Mayhugh*, 336 A.2d 379 (Pa. Super. 1975) ("Fundamental to the concept of due process is the principle that every person who stands accused of a crime is entitled to a fair and impartial trial."). Procedural Due Process rights attach in any action where the government may attempt to deprive an individual of life, liberty, or property. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).

The Pennsylvania Supreme Court has not yet addressed defining "adequate notice" as it relates to Procedural Due Process; however, lower courts have elucidated the meaning to be that,

16

at a minimum, the "notice contain a sufficient listing and explanation of the charges against a person, so that he or she may prepare an adequate defense." *LT Int'l Beauty Sch., Inc. v. Com., Bureau of Prof'l & Occupational Affairs, State Bd. of Cosmetology*, 13 A.3d 1004, 1013 (Pa. Commw. Ct. 2011). The issue of what constitutes the opportunity to be heard has been famously dealt with in the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976), declaring that one's opportunity to be heard before being deprived of a fundamental right must occur at "a meaningful time, in a meaningful manner." The United States Supreme Court has long held that a fair and impartial tribunal requires an absence of bias in the trial of cases and that the judge in a case may not preside where he has an interest in the outcome. *In re Murchison*, 349 U.S. 133, 136 (1955); *See also Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016); *Kaley v. United States*, 134 S. Ct. 1090 (2014).

Substantive Due Process is the concept of guaranteeing "fundamental fairness and substantial justice." *Commonwealth v. Martinez*, 147 A.3d 517, 534 (Pa. 2016) (Saylor, C.J., concurring) (quoting *Khan v. State Bd. of Auctioneer Exam'rs*, 842 A.2d 936, 946 (PA. 2004)). In *Martinez*, the appellees had all pleaded guilty to various sexual offenses and, because of the pleas in place with the Commonwealth, each registered as sex offenders for ten years pursuant to Megan's Law. 147 A.3d at 520-21. However, after the pleas were entered, the General Assembly passed the Sex Offender Registration and Notification Act (SORNA), which would have required the appellees to register for 25 years to life. *Id.* at 521-22. Chief Justice Saylor concurred with the Court's decision to uphold the lower courts' enforcement of the Megan's Law-based plea agreements; that concurrence is rooted in the concept of fundamental fairness, noting that the appellees were entitled to the agreement for which they had bargained as a matter of Due Process. *Id.* at 535.

17

Appellant's case is afforded the benefit of the attachment of Procedural Due Process as outlined above, and her rights were protected, not violated. Appellant was under adequate notice of the proceedings against her, as M.H. died on February 3, 2015, she was charged on April 16, 2015, and her trial took place in December 2016. The Information filed enumerated the seven charges she would be facing, including those on appeal here. Further, she had the opportunity to be heard and elected not to testify, which is her constitutional right. (N.T. 12/8/16, p. 10). That opportunity to be heard, consistent with *Mathews*, was during the course of her trial, in the courtroom. She also had the opportunity to defend herself in front of a fair and impartial tribunal, which she utilized in the form of her attorney's presentation of defense; the trial lasted a full week, in front of a jury of 12, which had been chosen with the assistance of Appellant's counsel. Additionally, this Court is on record ensuring the Appellant's decision not to testify was hers alone and made knowingly, intelligently, and voluntarily. (N.T. 12/8/16, pp. 4-12). Moreover, there is nothing in the record or alleged by either defendant in the case at any point to suggest improper interest in the outcome by this Court, so demonstrating this Court's compliance with *Murchison*. Therefore, Appellant's Procedural Due Process rights were not violated.

Appellant's Substantive Due Process rights were also not violated. Appellant argues that the Commonwealth failed to prove malice and causation beyond a reasonable doubt such that this right was violated, presumably (but not articulated by Appellant) because the failure to prove these concepts and then to convict her goes against the ideas of fundamental fairness and substantial justice as explained in *Martinez, supra*. However, as demonstrated above in Section I, malice and causation were proven by the Commonwealth beyond a reasonable doubt. The jury was given sufficient information from which to conclude reasonably that Appellant was the perpetrator of M.H.'s injuries, and all three medical experts in the case agreed that he died from a

18

totality of his injuries. (N.T. 11/29/16, p. 64; N.T. 12/7/16, pp. 320-21; N.T. 12/8/16, p. 302).

The jury was instructed on the burden of proof and the meaning of "beyond a reasonable doubt," and it still returned a unanimous guilty verdict. (N.T. 12/9/16, pp. 115-17). The jury was also instructed on circumstantial evidence and drawing reasonable conclusions therefrom based on common sense and human experience. (N.T. 12/9/16, p. 122). The jury was further instructed on malice and its specific application to the charge of Third Degree Murder. (N.T. 12/9/16, pp. 136-39). As for causation, it is not itself a specific element of any of the crimes charged but was still, as demonstrated above in Sections IA-IC, proven beyond a reasonable doubt. The jury was instructed as to the elements, and in finding the Appellant guilty of Third Degree Murder and Aggravated Assault, it asserted its unanimous belief that the members believed, beyond a reasonable doubt, that Appellant is the one who inflicted the injuries which led to M.H.'s death. Thus, the Appellant's Substantive Due Process rights were not violated.

IV. Appellant argues the evidence was insufficient as a matter of law to sustain her conviction for Aggravated Assault, alleging the Commonwealth failed to establish causation where the Medical Examiner's report failed to establish when the child's injuries occurred, and the Medical Examiner conceded that the injuries could have been inflicted when the child was not in Appellant's custody.

Appellant's argument here centers on the same argument made in Section IC, but substitutes the charge of Aggravated Assault for the charge of Third Degree Murder. As it was already shown above that the Medical Examiner established to a reasonable degree of medical certainty a time frame in which the injuries occurred, and it was established that the Appellant was present with the child in that time frame, the jury was able to make the reasonable inference that the injuries occurred in that window so as to find the Appellant guilty of Third Degree

19

Murder. Having made that finding, the evidence is also sufficient to sustain a conviction for Aggravated Assault.

Factually, the jury was presented with information from M.H.'s father, Paul Hunt, and paternal grandmother, Barbara Baltsukonis, demonstrating that M.H. left their care on the morning of the Friday before his death with no injuries. (N.T. 12/5/16, pp. 79, 130). There was additional evidence elicited to show that there was a poor relationship between Appellant and Ms. Baltsukonis; this information leads to a reasonable inference that, had M.H. received any injuries while he was in the care of his grandmother, Appellant would have made it known to others and/or would have sought care for M.H. (N.T. 12/5/16, p. 85-86, 122). As none of these things happened, it was reasonable for the jury to be able to conclude that the injuries occurred between the time Appellant received custody of M.H. Friday morning and the time that Appellant told Grafton about bruising on M.H. Sunday afternoon. (There is no need to repeat the legal basis for the arguments, as that is demonstrated in Section IC above).

V.  Appellant argues her convictions for Third Degree Murder and Aggravated Assault were against the weight of the evidence, as the Commonwealth's evidence failed to establish causation and the injuries could have been inflicted during a time when the child was not in Appellant's custody, and as such these two convictions should shock the court's conscience.

Standards Governing Weight of the Evidence

A true and genuine weight of the evidence challenge "concedes that sufficient evidence exists to sustain the verdict." *Commonwealth v. Murray*, 597 A.2d 111, 115 (Pa. Super. 1991) (en banc) (Olszewski, J., concurring and dissenting), (citing *Commonwealth v. Taylor*, 471 A.2d 1228, 1230 (Pa. Super. 1984)).

The standard of review for weight of the evidence challenges is as follows:

20

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.

*Widmer, supra,* 744 A.2d at 751–52; *see also Commonwealth v. Cousar,* 928 A.2d 1025, 1036 (Pa. 2007) (a verdict is against the weight of the evidence only when the verdict is so contrary to the evidence as to shock one's sense of justice). The weight given to the direct and circumstantial evidence at trial is a choice for the factfinder. *Commonwealth v. West,* 937 A.2d 516, 521 (Pa. Super. 2007).

The Superior Court has often emphasized that it is not only a "trial court's inherent fundamental and salutary power, but its duty to grant a new trial when it believes the verdict was against the weight of the evidence and resulted in a miscarriage of justice." *Frisina v. Stanley,* 185 A.2d 580, 581 (Pa. 1962). A new trial should not be granted because of mere conflict in testimony or because a court on the same facts would have arrived at a different conclusion. *Thompson v. City of Philadelphia,* 493 A.2d 669, 672 (Pa. 1985). A new trial should only be "awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Mammoccio v. 1818 Market Partnership,* 734 A.2d 23, 28 (Pa. Super. 1999).

It is the duty of an appellate court to give the gravest consideration to the findings and reasons advanced by the trial judge. *See Widmer, supra.* A reviewing court "will not reverse the denial of a new trial, unless there was a clear abuse of discretion or an error of law which controlled the outcome of the case...." *Commonwealth v. Brown,* 648 A.2d 1177, 1189 (Pa.

21

Super. 1994). "One of the least assailable reasons for granting [or denying] a new trial is the lower court's conviction that the verdict was [or was not] against the weight of the evidence and that new process was [or was not] dictated by the interests of justice. With reasons for this action given or appearing in the record, only a palpable abuse of discretion will cause us to overturn the court's action." *Id.* at 1189-90. In determining whether or not the grant of a new trial constituted an abuse of discretion, the entire record must be reviewed. *Id.* at 1190.

> An appellate court by its nature stands on a different plane than that of a trial court. Whereas a trial court's decision to grant or deny a new trial is aided by an on-the-scene evaluation of the evidence an appellate court's review rests solely upon a cold record. Because of this disparity in vantage points, an appellate court is not empowered to merely substitute its opinion concerning the weight of the evidence for that of the trial judge. Rather our court has consistently held that appellate review of the trial court's grant of a new trial is to focus on whether the trial judge has palpably abused his discretion, as opposed to whether the appellate court can find support in the record for the jury's verdict. *Id.*

To determine whether a trial court's decision constituted a palpable abuse of discretion, an appellate court must "examine the record and assess the weight of the evidence...." *Id.* Where the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion. *Id.* In this case, the evidence was of sufficient weight to support the jury's finding of guilt.

Appellant raises the argument of weight of the evidence claiming that her convictions for Third Degree Murder and Aggravated Assault should shock the conscience of the court because of the Commonwealth's failure to establish causation and because of the possibility the injuries were inflicted when M.H. was not in her care. However, it has been shown repeatedly herein that the Commonwealth did, in fact, establish causation. The verdict is not so contrary to the evidence as to shock the conscience of this court because the evidence showed that M.H.'s death was a result of the totality of the circumstances, namely multiple blunt force traumas and a lack of

22

medical care, and experts from both sides did find or could find that the manner of death was homicide. (N.T. 12/7/16, p. 320; N.T. 12/8/16, p. 279). It is not shocking to the conscience of this court for the members of the jury to find that they believed the testimony of the witnesses proving that the injuries were sustained while M.H. was in the care of the Appellant so that they could determine, beyond a reasonable doubt, that she was the perpetrator. It is further not shocking to the conscience of this court that the jury would believe that the situation was such that M.H. would have survived had he been given medical care, and that it was Appellant's simultaneous failure to do so and hindrance of other means by which care could have been given to M.H. that led to his death.

There are some facts of this case that are worth more weight than others, and this court believes they were weighed appropriately by the jury. Testimony from Paul Hunt, Barbara Baltuskonis, Elaine Teefy, and Linda Heisserman establishing that M.H. did not have any injuries Friday morning is powerful, especially when coupled with testimony from the Medical Examiner that the injuries were most likely inflicted sometime on Friday night or Saturday. (N.T. 12/7/16, pp. 286, 327, 331). The Appellant argues for the *possibility* that the injuries occurred when M.H. was not in her care; this mere possibility is not worth the same weight as the multitude of evidence tending to prove the injuries were inflicted during her time with the child. The fact that no medical care was sought for M.H. is undisputed and was given appropriately heavy weight when considered with the testimony showing that Appellant was the reason for the lack of care.

For all of the preceding reasons, Appellant's convictions for Third Degree Murder and Aggravated Assault are not against the weight of the evidence, and this court did not abuse its discretion in denying Appellant a new trial on these grounds.

23

**VI.** Appellant argues the Court of Common Pleas erred at N.T. 12/6/16, pp. 82-83, where it held the testimony of Charles Albert's preliminary hearing could be read to the jury.

Charles Albert was a caseworker for Children and Youth Services who was assigned to Appellant and M.H. after M.H. presented to the emergency department in January of 2015 following injuries to his eyes from seasoning salt. (N.T. 12/5/16, p. 244). He was a witness for the Commonwealth who would have been called to testify during the course of Appellant's trial. However, Mr. Albert could not appear[8] and was declared by the court as "unavailable" after an *in camera* hearing to that effect. Consequently, his pre-trial testimony from a previous hearing was read into evidence for the jury.

**A.** Appellant argues that Mr. Albert was improperly declared "unavailable" for the purpose of exception to the hearsay rule.

Pennsylvania Rules of Evidence 804(a)(4) dictates that a declarant may be declared unavailable as a witness and thus his statement becomes an exception to the rule against hearsay if the declarant "cannot be present to testify at the trial or hearing because of a death or then-existing infirmity, physical illness, or mental illness." Pa. R. E. 804(a)(4). *See, e.g., Commonwealth v. McClendon*, 874 A.2d 1223 (Pa. Super. 2005) (holding witness unavailable to testify under Pa. R. E. 804(a)(4) given that there was unrebutted testimony that witness suffered both significant pain from kidney stones and decreased mental acuity from taking prescription pain killers and trial court could not reasonably predict immediate resolution of witness' condition).

In the instant case, Mr. Albert had been in a catastrophic car accident between the time of the preliminary hearing and the trial. (N.T. 12/6/16, p. 54). Mr. Albert's mother testified during

---

[8] Mr. Albert was rendered unavailable due to a catastrophic car accident.

24

an *in camera* hearing to the nature and extent of his injuries. The accident caused Mr. Albert to spend three weeks in a coma, followed by time spent requiring a respirator; he was also treated for a brain injury and required on-going rehabilitation. (N.T. 12/6/16, pp. 54-55). Further, Mrs. Albert testified that Mr. Albert requires the use of a wheelchair and physical assistance to get around. (N.T. 12/6/16, p. 56). She explained that Mr. Albert required speech therapy, and at the time of the hearing, he was able to understand what was said to him but could not articulate his thoughts. (N.T. 12/6/16, p. 57). His memory, as described by his mother, was observed to be "faulty at best." (N.T. 12/6/16, p. 58). She was specifically able to highlight his inability to recognize his family following his accident and his ongoing difficulties remembering past events, specifically between August of 2014 and November of 2015. (12/6/16, pp. 59-61). Importantly, bringing Mr. Albert in to testify posed a significant risk to his health. These facts properly qualify Mr. Albert as "unavailable" under Rule 804(a)(4), and so his testimony having been read in was pursuant to a proper exception to the rule against hearsay.

B.    Appellant argues that defense counsel did not have a full and fair opportunity to cross-examine Mr. Albert at the preliminary hearing.

Defense counsel for both co-defendants, as well as the defendants themselves, were present at the preliminary hearing where Mr. Albert's testimony was elicited. During that hearing, Mr. Albert was cross-examined by counsel for both defendants, spanning 18 pages of the preliminary hearing transcript. (N.T. 5/5/15, pp. 14-32). The opportunity to cross examine the witness was present and utilized by defense counsel. Appellant's argument to this point is meritless.

25

VII. Appellant argues the Court of Common Pleas erred at N.T. 12/8/16, pp. 176-181, where the defense's objection to the Commonwealth's question of co-defendant Grafton seeking to elicit that he relied on the Appellant's "truthfulness" was overruled, alleging that this question called for inadmissible character evidence where the same was not first put at issue by Appellant.

The Commonwealth, in cross-examining co-defendant Grafton, inquired of Grafton whether he had relied on Appellant's truthfulness in regards to what happened to M.H. on January 31, 2015, because Grafton had no first-hand knowledge of what had occurred. (N.T. 12/8/16, pp. 175-76). In relevant part, the Notes of Testimony provide the conversation as follows:

> Commonwealth: You said she told you things about bruises, but do you have any firsthand knowledge about any bruises that were on [M.H.] on Saturday the 31st?
> Grafton: Like seeing them myself you mean?
> C: Yes.
> G: No.
> C: Do you have any firsthand knowledge as to what may have caused any bruises that [Appellant] said she noticed on Saturday the 31st?
> ...
> G: No.
> ...
> C: So whatever information you had Saturday night about the existence of bruises and the cause of the bruises would have come from [Appellant]?
> G: Yes, sir.
> C: So at that point, you're left to rely on her truthfulness?
> G: Yes.

(N.T. 12/8/16, pp. 175-76). Appellant's trial attorney argued that the Commonwealth was improperly putting Appellant's character into question where the same was not first put at issue by her, and the Commonwealth responded by arguing that it was not character evidence for the establishment of reputation. (N.T. 12/8/16, pp. 176-177). This court overruled defense counsel's objection, noting that all witnesses put the Appellant's reputation or credibility at issue, and

26

agreeing with the Commonwealth that this was not a utilization of improper character evidence, because it was not character evidence at all. (N.T. 12/8/16, pp. 179-181).

In this circumstance, the "truthfulness" question is only evidence to show Grafton's actions were pursuant to reliance on Appellant's words because Grafton had no firsthand knowledge. In his cross-examination, Grafton explained to the Commonwealth that he invited Appellant and M.H. to attend a bowling outing on Friday night, January 30. (N.T. 12/8/16, p. 175). Appellant declined, telling Grafton that M.H. "wasn't feeling well." (N.T. 12/8/16, p. 175). The Commonwealth establishes that Grafton had no firsthand knowledge of M.H.'s condition at this time and instead relied on Appellant's truthfulness in believing that was the case. (N.T. 12/8/16, p. 175).

This court's overruling of the objection was based in the fact that the Commonwealth's questions did not bring Appellant's character for truthfulness into question; the Commonwealth was not seeking to attack her reputation. Rather, the Commonwealth was establishing that the only information Grafton had about M.H.'s condition and the bruising came from Appellant, and his decision not to seek medical care for the child immediately was based on his belief that Appellant was telling him the truth about the origin of the bruises and M.H.'s condition. (N.T. 12/8/16, p. 176). Under this specific set of circumstances, this Court properly overruled defense counsel's objection.

**CONCLUSION:**

This court properly found sufficient evidence to sustain both of Appellant's convictions for Third Degree Murder and Aggravated Assault. Additionally, this court did not abuse its discretion in holding the jury's verdict not to be against the weight of the evidence or in finding the requisite malice and causation proven beyond a reasonable doubt to uphold the jury's verdict.

27

This court also properly admitted both Mr. Albert's testimony and the Commonwealth's question regarding truthfulness. For those reasons, the Judgment of Sentence should be affirmed on appeal.

BY THE COURT:

_____
JAMES F. NILON, JR., J.

FILED
2017 JUN 28 PH 12: 05
OFFICE OF
JUDICIAL SUPPORT
DELAWARE CO.

28