J. S66035/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JOSIAH DAVON BAILEY, | : | No. 2085 EDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, January 12, 2017,
in the Court of Common Pleas of Montgomery County
Criminal Division at No. CP-46-CR-0004789-2015

BEFORE: GANTMAN, P.J., PANELLA, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED APRIL 15, 2019**

Josiah Davon Bailey appeals from the January 12, 2017 judgment of sentence entered by the Court of Common Pleas of Montgomery County following his conviction of: corrupt organizations, conspiracy, two counts each of attempted murder and aggravated assault and one count of possession of a firearm without a license.[1] The trial court sentenced appellant to an aggregate term of 25 to 57 years' imprisonment. After careful review, we affirm.

The trial court provided the following synopsis of the factual and procedural history of this case:

> During the fall and winter of 2014, Brothas from
> Another ("BFA") and Straight Cash Money Gang

---

[1] 18 Pa.C.S.A. §§ 911(b), 903(a), 901(a), 2702(a), and 6106(a), respectively.

("SCMG") were at war in the streets of Pottstown, Montgomery County. Formerly one gang, the two factions broke off and engaged in violence and drug trafficking. Devon Vogelsang, Markel Harper, Ian Shawell, [appellant] and others were associated with BFA. Abraham Charriez, Christopher Charriez, Jose Charriez, Dathan Stevens, Daniel Garcia, co-defendant Alexander Scott and others were associated with SCMG. Law enforcement conducted an extensive investigation using court ordered wiretaps, search warrants, surveillance and controlled buys. The investigation, dubbed "Operation War Ready," revealed that [sic] the following.

On November 25, 2014, Devon Vogelsang and Dathan Stevens shot each other at Rolling Hills Apartments in Pottstown, Montgomery County. Vogelsang was hospitalized in Lehigh Valley Hospital. A .32 caliber gun was recovered from the scene which matched the bullet recovered from Stevens' leg.

On November 30, 2014, Markel Harper shot his rival Abraham "Fl[o]cco" Charriez in the area of Chesnutt and Franklin Streets. Markel Harper gave a statement to police, wherein he detailed the ongoing gang war between BFA and SCMG.[Footnote 1] Harper told police that he shot Flacco because "he was trying to kill me. He sent his boys to shoot me and I had to handle the situation before they killed me." Seven cartridge casings were recovered from the scene, all from the same .40 caliber gun.

[Footnote 1] He gave the statement to Detective James Carbo on March 8, 2015. Prior to giving the statement, he was read his constitutional rights, which he waived and agreed to give a voluntary statement.

Following Fl[o]cco's shooting, Harper, [appellant] and Ian Shawell went to visit Devon Vogelsang in the hospital. Vogelsang was shot at the Rolling Hills

apartments a few days prior. Hospital surveillance footage showed the three men checking in to visit Vogelsang at the hospital. Cell phone records also placed [appellant]'s cell phone in the area of the hospital at 8:21 p.m.

When the men returned to Pottstown, they went to Johnece Lacy's apartment; Shawell backed the car into her driveway. Harper got out of the car and saw co-defendant[, Scott, appellant,] and Shawell looking off to the right, and then he saw a flash of light accompanying a gunshot. He and [appellant] began shooting back; Harper with the same Smith and Wesson .40 caliber he used to shoot Fl[o]cco, and [appellant] with a .380. Shawell didn't shoot. 9 mm, .40 caliber and .380 shell casings were recovered from the scene. So many shots were fired that the police ran out of evidence markers. Shawell fled the scene in the vehicle and was stopped by police. Two hundred seventy three bags of heroin and .380 caliber shell casing were found in the car. Lieutenant Echevarria opined that the quantity and packaging of the heroin was consistent with Possession with the Intent to Deliver. No gun was recovered from Shawell.

As to the December 24, 2014 shooting of Daniel Garcia, Harper told police that he, Vogelsang and [appellant] went to Abraham "Flocco" Charriez's house and hid in his neighbor's walkway. The plan was for the three men to lie in wait for "Fl[o]cco or someone from his squad [SCMG]," and shoot them. He stated, "a blue Cadillac pulled up and double parked in front of Flocco's house. I saw Jun [Jose Charriez] in the back seat and I popped out of the walkway and started shooting at the people in the car. I don't know how many times Devon [Vogelsang] shot, but when I turned around, I saw Crakk [appellant] shooting. I know I emptied the revolver, so I shot six times." He further stated that he had a .357 revolver, Vogelsang had an unknown weapon and [appellant] used the same .380 that he used in the Elm Street shooting on November 30, 2014. When asked why they intended

to shoot Fl[o]cco or a member of his squad, he stated, "It was a war and they were coming for me, so I had to handle it." At the conclusion of his statement, Harper reviewed his statement, made one change and signed the document.

On December 26, 2014, Michael Hill[Footnote 2] and Jamel Williams were shot at in the alley behind 382 N. Evans Street.

[Footnote 2] Michael Hill is Markel Harper's father. Alexander Scott was acquitted of this charge.

On December 29, 2014, Devon Vogelsang was arrested. A Kel-Tech .380 caliber handgun and a Taurus 9 mm gun were found in the car at the time of his arrest. [Appellant]'s phone number was saved in his phone under "Crakk." The guns recovered from Vogelsang were sent to National Medical Services ("NMS") for DNA testing. The guns were compared to the known DNA profiles of Johnece Lacey, Devon Vogelsang, Markel Harper and [appellant]. The Kel-Tech .380 contained a mixture of DNA from at least four contributors. Johnece Lacey was the only individual excluded as a contributor. The Taurus contained a mixed [sic] of DNA from at least five contributors, again excluding Ms. Lacey. [Appellant] could not be definitively included or excluded from the result.

Also on December 29, 2014, Detectives Mark Minzola and Drew Marino interviewed Devon Vogelsang. Vogelsang was uncooperative, so law enforcement decided to tell him what they had learned through their investigation. They told him that they knew that SCMG and BFA had previously been one gang, that there had been a split and the names of the individuals on each side.

On January 5, 2015, Vogelsang made a call from the prison to "Joey,"[Footnote 3] wherein he details the law enforcement investigation and what police told him they knew when he was arrested on an

outstanding warrant. [Appellant] offers to collect any outstanding debts for Vogelsang.

> [Footnote 3] In his statement to police[,] Markel Harper indicated that [appellant] goes by "Crakk whose real name is Josiah, but we call him Joey."

On February 11, 2015[Footnote 4], Markel Harper was shot five times by an unknown shooter in Leasher Alley. A handgun with Harper's blood on it was recovered from the scene. No one was charged as a result of this shooting.

> [Footnote 4] The same date, Scott posted to Facebook "I'm about to go celebrate, today is a day." and on Twitter "I don't make excuses I make it happen, who's next."

On February 24, 2015, court ordered wiretaps intercepted Alexander Scott arranging to sell Stephen Malenchek 28 bags of heroin for $160. On February 26, 2015, the men again arranged a deal for heroin.

Also on February 24, 2015, court ordered wiretaps intercepted Scott arranging to buy prescription drugs from Allen Witkowski for resale.

On February 28, 2015, law enforcement listened, in real time, while Alexander Scott planned to find Lazard "Laz" Morgalo[Footnote 5] and kill him for robbing his little brother. Calls in the afternoon detailed Scott's journey from Reading to Pottstown, armed with the Tech-9, and his plan to shoot Morgalo.[Footnote 7] Law enforcement flooded the 600 block of Chesnutt Street, where homes associated with BFA were located, in an attempt to thwart Scott's plan. Calls between the [sic] Scott and Jose "Jun" Charriez, a member of SCMG, indicated that Charriez was armed and prepared to provide support and to assist Scott in carrying out his plan to shoot members of BFA.

> [Footnote 5] Morgalo was a member of BFA.
>
> [Footnote 7] He was also arranging a drug deal at the same time and was driven to Pottstown by his customer.

Charriez arrived in the area before Scott and alerted him to the presence of law enforcement. Upon hearing of the heavy law enforcement presence, Scott decided to wait until it grew dark to carry out the shooting. In a call at 5:29 p.m., Scott can be heard talking about the clip in his gun being full.

After 9:00 p.m., later calls detail his movements again, as he crept through the streets, armed with the Tech-9, trying to find Morgalo. Calls indicated that, again, Charriez was ready to back him up. During these calls, Scott was calmly and quietly relaying his location to Charriez as he crept through the alley near the 600 block of Chesnutt Street. Law enforcement located and removed Morgalo from the street. Unable to find Morgalo to carry out his plan, Scott arranged a ride and left the area.

On March 2, 2015, police intercepted calls between Alexander Scott and a customer setting up a drug deal in Pottstown. Law enforcement spotted Scott, he fled on foot and was ultimately arrested with a Tech-9 on his person, 53 vials of crack, heroin, three cell phones and empty vials. Again, possessed with the intent to deliver.[Footnote 8]

> [Footnote 8] Search warrants on homes associated with SCMG uncovered larger amounts of drugs and the same packaging material that was on [appellant] at the time of his arrest. Clothing with SCMG on it was also recovered.

The complaint in the instant matter was filed on May 12, 2015. On June 30, 2015, the case was

transferred to the Court of Common Pleas. On July 16, 2015, the Commonwealth filed a notice of joinder, joining [appellant]'s case with the cases indexed at 3945-15, 3946-25, 3947-15, 3655-15, 3656-15, 3657-15, 4787-15, 4788-15, 4789-15, 4790-15 and 4791-15. A pretrial conference was scheduled for September 10, 2015. On September 1, 2015, the Commonwealth filed a second notice of joinder. On September 10, 2015, the case was placed on the trial list.[Footnote 9] On October 13, 2015, appointed counsel filed a Motion for Hearing or All Charges to be Dismissed. On October 14, 2015, counsel filed a Petition for a Writ of Habeas Corpus and a Motion to Modify Bail. On November 3, 2015, the Bills of Information were filed. [Appellant]'s Petition for Habeas Corpus was scheduled for November 30, 2015. On that date, it was continued to December 7, 2015. On December 7, 2015, the hearing was again continued. On December 21, 2015, [appellant] filed a Petition to Dismiss. On January 29, 2016, the habeas was scheduled for February 22, 2016. On February 5, 2015, counsel filed an omnibus pretrial motion. On February 5, 2016, the habeas corpus and severance motions were scheduled for February 18, 2016. On February 5, 2016, the trial listing resulted in a tentative trial date of April 18, 2016. On February 8, 2016, the Commonwealth sent a letter to the chambers of the undersigned requesting a trial date before March 20, 2016. The motion to dismiss was heard on February 18, 2016 and denied by Order of March 3, 2015. On April 13, 2016 counsel filed a motion in limine. On May 26, 2016, the Commonwealth filed a Motion to Consolidate. On June 15, 2016, the court denied the motion for severance. On July 8, 2016, the Commonwealth filed a Motion to Amend the bills of information in six of the joined cases, including [appellant]'s. On July 11, 2016, defense counsel filed a response to the motion. By order of August 16, 2016, the cases were scheduled for trial on October 17, 2016. All outstanding motions were scheduled to be heard on September 26, 2016. On August 31, 2016, the court issued an order granting defense counsel's

application for the appointment of a private investigator. On September 6, 2016, counsel filed a motion to dismiss pursuant to Rule 600. An order denying the motion was issued on September 28, 2016. The same date, the court granted the Motion to Amend the bills of information. On October 3, 2016, the Commonwealth filed a motion to admit other bad acts; a hearing was scheduled for October 6, 2016. A call of the trial list took place on October 11, 2016. On October 14, 2016, the Court denied the Commonwealth's prior bad acts motion. Trial commenced on October 17, 2016.

> [Footnote 9] The case continued on a trial track, with monthly trial listing where neither party requested a continuance and [appellant] did not execute a Rule 600 waiver.

Following an eight day jury trial, [appellant] was convicted of Corrupt Organizations,[Footnote 10] Corrupt Organizations-Conspiracy,[Footnote 11] two counts of Attempted Murder[Footnote 12], two counts of Aggravated Assault,[Footnote 13] and one count of Possession of a Firearm without a License.[Footnote 14] On January 12, 2017 he was sentenced to an aggregate term of 25 to 57 years' incarceration in a state correctional institution. On January 20, 2017, [appellant] filed a Post-Sentence Motion and on May 12, 2017 an amended motion. A hearing was held on May 12, 2017 and the Motion was denied by Order of June 20, 2017. This appeal followed. By order of July 6, 2017, [appellant] was directed to produce a Concise Statement of Errors, pursuant to Pa.R.A.P. 1925(b). He has since complied with that directive.

> [Footnote 10] 18 Pa.C.S.A. § 911(b)(3).

> [Footnote 11] 18 Pa.C.S.A. § 911(b)(4).

> [Footnote 12] 18 Pa.C.S.A. § 901(a).

> [Footnote 13] 18 Pa.C.S.A. § 2702(a)(1).

[Footnote 14] 18 Pa. C.S.A. § 6101(a)(1).

Trial court opinion, 2/20/18 at 1-9 (citations to record omitted; footnote 6 omitted). The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on February 20, 2018.

Appellant raises the following issues for our review:

1. Whether the trial court committed manifest abuse of discretion when it failed to grant severance, or alternatively, did the trial court commit manifest abuse of discretion by allowing unfairly prejudicial evidence of violence and drug dealing, which had no connection to Appellant at Appellant's trial?

2. Whether the [trial] court should have denied the [C]ommonwealth's motion to amend the bills of information[?]

3. Whether the testimony of Detective Echevarria exceeded the bounds of expert testimony[?]

4. Whether the evidence was insufficient to convict [appellant] of the November 30, 2014, charge of attempted murder, the December 24, 2014 charge of attempted murder, or the charge of Corrupt Organizations[?]

5. Whether the court should have given a jury instruction for the charge of recklessly endangering another person as requested by the defense[?]

6. Whether the sentence of 25 to 57 years was harsh and excessive[?]

Appellant's brief at 3.

**I.**

At trial, the trial court granted the Commonwealth's motion to consolidate appellant's trial with Alexander Scott's trial. In his first issue on appeal, appellant contends that the trial court erred when it denied his motion to sever. (Appellant's brief at 8.) Specifically, appellant claims that the only "overlap" between appellant and Scott is that they were both "arrested and charged with being involved in a large scale drug operation." (*Id.* at 9.)

> Appellate review of a trial court's denial for a motion for severance is as follows:
>
>> A motion for severance is addressed to the sound discretion of the trial court, and . . . its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether the appellant was prejudiced by the trial court's decision not to sever. The appellant bears the burden of establishing such prejudice.
>
> ***Commonwealth v. Dozzo***, 991 A.2d 898, 901 (Pa.Super. 2010). The Pennsylvania Rules of Criminal Procedure govern the severance of offenses. Rule 583 reads, "The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together. Pa.R.Crim.P. 583. Further, Rule 582 provides that offenses may be tried jointly under the following circumstances:
>
>> **Rule 582. Joinder–Trial of Separate Indictments or Informations**
>>
>> (A) Standards

> > (1) Offenses charged in separate indictments or informations may be tried together if:
> >
> > > (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
> > >
> > > (b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1). Similarly, Rule 563 states:

> **Rule 563. Joinder of Offenses in Information**
>
> (A) Two or more offenses, of any grade, may be charged in the same information if:
>
> > (1) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
> >
> > (2) the offenses charged are based on the same act or transaction.
>
> (B) There shall be a separate count for each offense charged.

Pa.R.Crim.P. Rule 563.

*Commonwealth v. Mollett*, 5 A.3d 291, 305-306 (Pa.Super. 2010),

*appeal denied*, 14 A.3d 826 (Pa. 2011).

Here, the trial court concluded as follows:

> The evidence against co-defendant Scott was easily distinguishable from that against Bailey. In instructing the jury, the [trial] court stated, "[t]hey are being tried together, but they have separate charges, so don't mix them together." When reading the instructions as to the specific charges, the [trial] court again stated, "I don't want to confuse you, so it's going to take a little longer, but I'm going to read the charges as to [appellant] first and then the charges as to Mr. Scott." The jury was given the verdict sheet to aid in following along with the charge and separating the two defendants. When the charge was finished, the [trial] court again instructed the jury, "[y]ou've now been given all the charges and you have to consider each one of those charges and each defendant separately, so you have some work to do because there's a lot of charges there." There was no danger of confusion for the jury and while separate acts, all of the acts charged arose out of one large scale investigation into two corrupt related, warring organizations. The acts of each defendant were relevant to flesh out the entire story and the scale of the organizations in which they participated.

Trial court opinion, 2/20/18 at 17 (footnotes and citations to the record omitted).

Based upon our review of the record, we find that the trial court's conclusions are based in the record, and that appellant was not prejudiced by the trial court's decision to deny appellant's motion for severance.

Accordingly, the trial court did not commit an abuse of discretion, and appellant's first issue is without merit.

## II.

Appellant next argues that the trial court erred when it granted the Commonwealth's motion to amend the bills of information filed against appellant. Specifically, appellant contends that he was never afforded an opportunity to preserve or create testimony of witnesses pertaining to charges stemming from an incident that was alleged to have occurred on December 24, 2014. (Appellant's brief at 17-18.)

> According to Pa.R.Crim.P. 564, the court may permit amendment of an information "when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense." Pa.R.Crim.P. 564. Moreover, "[u]pon amendment, the court may grant such post-ponement of trial or other relief as is necessary in the interests of justice." *Id.* "[T]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." ***Commonwealth v. Sinclair***, 897 A.2d 1218, 1221 (Pa.Super. 2006). "[O]ur courts apply the rule with an eye toward its underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of the procedural rules." ***Commonwealth v. Grekis***, [] 601 A.2d 1284, 1288 ([Pa.Super.] 1992).
>
> As stated in ***Sinclair***, when presented with a question concerning the propriety of an amendment, we consider:

[w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the [amendment] is not permitted.

*Sinclair*, 897 A.2d at 1221 (quoting *Commonwealth v. Davalos*, 779 A.2d 1190, 1194 (Pa.Super. 2001), *appeal denied*, [] 790 A.2d 1013 ([Pa.] 2001) (citation omitted)). Additionally,

[i]n reviewing a grant to amend an information, the Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basis elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

*Id.*, at 1222. Further, the factors which the trial court must consider in determining whether an amendment is prejudicial are:

(1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new

facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Id.* (citation omitted). Most importantly, we emphasize that "the mere possibility amendment of information may result in a more severe penalty . . . is not, of itself, prejudice." ***Commonwealth v. Picchianti***, [] 600 A.2d 597, 599 ([Pa.Super.] 1991), ***appeal denied***, [] 609 A.2d 168 ([Pa.] 1992).

***Commonwealth v. Mentzer***, 18 A.3d 1200, 1202-1203 (Pa.Super. 2011).

The trial court reached the following conclusion:

The Commonwealth sought, based on information contained in the affidavit of probable cause and provided in discovery, to amend the [b]ills [of information] to provide [appellant] with the specific dates on which the alleged offenses took place. The original bills of information, filed on November 3, 2015, charged [appellant] with two counts of attempted murder. However, the original bills provided no detail as to the two counts of attempted murder. The Commonwealth sought amendment to include the dates and alleged victims of these two attempted murder charges, which is permissible under the Rules of Criminal Procedure. The Commonwealth argued that the amendment outlined for [appellant] how it intended to proceed at trial and what evidence would be introduced at trial. As amended, the bills substantial[ly] narrowed this window from November 2014 through April 2015 and provided specific information as to the two counts of [a]ttempted [m]urder that appeared in the original

> bills of information. Therefore, [appellant] was not prejudiced by the amendment and had ample notice of what the Commonwealth intended to prove at trial.

Trial court opinion, 2/20/18 at 19.

The Commonwealth filed a motion to amend the bills of information on July 8, 2016, which the trial court ultimately granted on September 28, 2016. As noted by the Commonwealth, appellant failed to file a writ of **habeas corpus** in order to determine whether the Commonwealth could make a **prima facie** showing pertaining to the amendment to the second attempted murder charge. (**See** Commonwealth's brief at 20-21.) Based upon our review of the record, we find that appellant was not prejudiced by the amendments to the bills of information, and accordingly, appellant's second issue is without merit.

## III.

In his third issue, appellant avers that Montgomery County District Attorney's Office Detective Erick Echevarria's testimony at trial improperly exceeded his scope as an expert witness. Specifically, appellant contends that Detective Echevarria improperly interjected his opinion and speculation as to intent based on his position as a lead investigator in this case. (Appellant's brief at 20.) Our standard for the admission of expert testimony involving coded language in drug transactions is as follows:

> [T]he admission of evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. **Commonwealth**

> ***v. Begley***, 780 A.2d 605, 620 (Pa. 2001). In narcotics investigations involving legally intercepted telephone conversations, expert testimony regarding the cryptic language used is permissible. ***See Commonwealth v. Huggins***, 68 A.3d 692 (Pa.Super. 2013) (***drug enforcement agent permitted to testify as both an expert, for the limited purpose of decoding drug jargon, and a layperson, regarding his personal perceptions during the investigation and opinion that defendant was one of the parties to the intercepted telephone calls***); ***Commonwealth v. Doyen***, 848 A.2d 1007, 1014 (Pa.Super. 2014 ("the coded and encrypted language utilized by drug traffickers" is an appropriate subject for expert testimony); ***Commonwealth v. Vitale***, 664 A.2d 999, 1001 (Pa.Super. 1995) (same). The standard for qualifying an expert witness is a liberal one: the witness need only have a reasonable pretension to specialized knowledge on a subject for which expert testimony is admissible. ***Commonwealth v. Riffert***, 549 A.2d 566, 576 (Pa.Super. 1988), ***appeal denied***, 562 A.2d 825 (Pa. 1989). The witness' expertise may be used in practical, occupational, or other experiential training; it need not have been gained through academic training alone. ***Id.***

***Commonwealth v. Kinard***, 95 A.3d 279, 288 (Pa.Super. 2014) (***en banc***) (emphasis added).

The ***Huggins*** court explicitly held that a law enforcement officer may testify as both an expert and as a layperson. Accordingly, we find that the trial court did not abuse its discretion when it permitted Detective Echevarria's testimony as to his personal perceptions and opinions during the investigation. Therefore, appellant's third issue is without merit.

**IV.**

Appellant next contends that the evidence presented was not sufficient to sustain a conviction for two counts of attempted murder and for one count of corrupt organizations.  (**See** appellant's brief at 22-26.)

> In reviewing the sufficiency of the evidence, we view all evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the fact finder] to find every element of the crime beyond a reasonable doubt.  This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.  Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty."
>
> Moreover, when reviewing the sufficiency of the evidence, the Court may not substitute its judgment for that of the fact finder; if the record contains support for the convictions, they may not be disturbed.

**Commonwealth v. Stokes**, 78 A.3d 644, 649 (Pa.Super. 2013) (citations omitted), **appeal denied**, 89 A.3d 661 (Pa. 2014).

**Attempted Murder**

We have previously held as follows:

> Under the Crimes Code, "[a] person commits an attempt when with intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of the crime."  18 Pa.C.S.A. § 901(a).  "A person may be convicted of attempted murder 'if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act.'"  **Commonwealth v.**

> *Dale*, 836 A.2d 150, 152 (Pa.Super. 2003) (citation omitted). *See* 18 Pa.C.S.A. §§ 901, 2502. "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime." *Commonwealth v. Gilliam*, [] 417 A.2d 1203, 1205 ([Pa.Super.] 1980). "The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence." *Commonwealth v. Schoff*, 911 A.2d 147, 160 (Pa.Super. 2006). "[T]he law permits the fact finder to infer that one intends the natural and probable consequences of his acts[.]" *Commonwealth v. Gease*, [] 696 A.2d 130, 133 ([Pa.] 1997).

*Commonwealth v. Jackson*, 955 A.2d 441, 444 (Pa.Super. 2008), *appeal denied*, 967 A.2d 958 (Pa. 2009).

In the case at bar, the Commonwealth charged appellant with two counts of attempted murder arising from incidents occurring on November 30, 2014 and December 24, 2014. For the November 30, 2014 charge, appellant contends that the Commonwealth failed to prove beyond a reasonable doubt that appellant possessed the requisite intent to kill. Specifically, appellant avers that the shooting at issue involved no planning, no lying in wait, nor did it involve the use of a deadly weapon on a vital part of the body. (Appellant's brief at 24.) Appellant maintains a self-defense argument in that his only intent was to return fire and to scare the perpetrators away. (*Id.*) Appellant further argues that there was no evidence presented at trial that it was a rival gang that initiated the shooting or that the shooting was in retaliation for a previous shooting carried out by

a fellow member of appellant's gang, dismissing this as "speculation" on the part of the Commonwealth and trial court. (*Id.*)

When reviewing the evidence presented in the light most favorable to the Commonwealth, as verdict winner, we find that the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that appellant possessed the intent to kill during the November 30, 2014 incident and that appellant's argument is without merit. During trial, the jury heard testimony indicating that there was ongoing gang activity taking place between BFA and SCMG. (*See* notes of testimony, 10/18/16 at 200-237.) On November 25, 2014, Devon Vogelsang, a member of BFA, and Dathan Stevens, a member of SCMG, engaged in a gunfight in which both men were injured. (Notes of testimony, 10/20/16 at 27-36.) Markel Harper, a member of BFA, shot Abraham Charriez, a member of SCMG also known as "Flocco" (hereinafter "Flocco"), several days later on November 30, 2014.

Following "Flocco's" shooting, Harper stated that he, Ian Shawell, and appellant went to visit Vogelsang at Lehigh Hospital. (Notes of testimony, 10/18/16 at 225-227.) Harper described what happened after visiting Vogelsang as follows:

> [Shawell] backed his car into a parking spot and I got out of the car and started walking to the entranceway. I forgot my cigarettes, so I turned around and started walking back to [Shawell]'s car. And that's when I saw Crakk[2] and [Shawell]

---

[2] The record reflects that appellant's nickname is "Crakk." (Notes of testimony, 10/18/16 at 228.)

> looking over to the right at something. I looked over and that's when I saw the spark from a gunshot and then
>
> . . . .
>
> And then me and Crakk started shooting back. I couldn't see who was shooting at us, but they kept firing at us and we kept firing back at them.

Notes of testimony, 10/18/16 at 227.

The above evidence, while circumstantial, is sufficient to justify a guilty verdict for an attempted murder charge. Indeed, the Commonwealth proffered evidence of ongoing gang activity taking place between two rival gangs, with the November 30, 2014 shooting representing one event in a series of violent incidents. Therefore, appellant's claim as it relates to the November 30, 2014 shooting is without merit.

Appellant next contends that the Commonwealth failed to present sufficient evidence to justify his conviction for attempted murder as it relates to the shooting that took place on December 24, 2014. In his brief, appellant appears to shape the argument as a weight of the evidence claim.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.
>
> *Commonwealth v. Mucci*, 143 A.3d 399, 410-411 (Pa.Super. 2016), (quoting *Commonwealth v.*

> ***Clay***, [] 64 A.3d 1049, 1054-1055 ([Pa.] 2013)). To successfully challenge the weight of the evidence, a defendant must prove the evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Mucci***, 143 A.3d at 411 (quoting ***Commonwealth v. Sullivan***, 820 A.2d 795, 806 (Pa.Super. 2003)).

***Commonwealth v. Windslowe***, 158 A.3d 698, 712 (Pa.Super. 2017), ***appeal denied***, 171 A.3d 1286 (Pa. 2017).

Upon review of appellant's brief, the argument pertaining to the weight of the evidence is limited to the credibility of Markel Harper's testimony regarding an attempted murder alleged to have occurred on December 24, 2014. (***See*** appellant's brief at 25-26.) Put another way, appellant invites us to reassess the jury's credibility determination as it relates to Harper's testimony. We are required to decline this invitation. Indeed, an appellate court cannot, on a weight of the evidence review, replace the fact-finder's determination of credibility with its own determination. ***See Commonwealth v. Blackham***, 909 A.2d 315, 320 (Pa.Super. 2006), ***appeal denied***, 919 A.2d 954 (Pa. 2007) ("It is not for this Court to overturn the credibility determinations of the fact-finder" (citations omitted)). Therefore, we find that the trial court's denial of appellant's post-sentence motion as it relates to the weight of the evidence was not an abuse of discretion.

## Corrupt Organizations

The crime of corrupt organizations is codified at Section 911 of the Crimes Code, which provides, in relevant part:

> It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.
>
> 18 Pa.C.S.[A.] § 911(b)(3). It is also unlawful for a person to conspire to violate subsection (b)(3). *Id.* at § 911(b)(4). Subsection (h) defines "enterprise" as "any . . . corporation, association or other legal entity, . . . engaged in commerce and includes legitimate as well as illegitimate entities and governmental entities." *Id.* at § 911(h)(3). Further, the subsection lists numerous crimes that constitute "racketeering activity," including theft and insurance fraud, and defines a "pattern of racketeering activity" as "a course of conduct requiring two or more acts of racketeering activity one of which occurred after the effective date of this section." *Id.* at §§ 911(h)(1), (h)(4).

***Commonwealth v. Rogal***, 120 A.3d 994, 1001 (Pa.Super. 2015), ***appeal denied***, 128 A.3d 220 (Pa. 2015).

Here, appellant avers that the Commonwealth failed to prove two or more acts of racketeering beyond a reasonable doubt. (Appellant's brief at 26.) Appellant specifically argues that the Commonwealth's two acts of racketeering were the two charges of attempted murder. (***Id.***) The trial court notes that the "the evidence established that BFA was a group of individuals engaged in violence and drug dealing. The two predicate acts in

this case were the two counts of attempted murder." (Trial court opinion, 2/28/18 at 33.) As noted above, we determined that the Commonwealth presented sufficient evidence to warrant convictions for both counts of attempted murder. Accordingly, the Commonwealth has also set forth sufficient evidence to warrant a conviction for corrupt organizations and appellant's claim is without merit.

## V.

Appellant next argues that the trial court erred when it denied his request to have the jury instructed on the charge of recklessly endangering another person ("REAP"). (**See** appellant's brief at 26-28.) When reviewing a trial court's jury instructions, we are held to the following standard:

> [W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

**Commonwealth v. Roane**, 142 A.3d 79, 95 (Pa.Super. 2016), quoting **Commonwealth v. Trippett**, 932 A.2d 188, 200 (Pa.Super. 2007) (citations omitted).

In his argument, appellant relies heavily upon **Commonwealth v. Griffin**, 456 A.2d 171, 178 (Pa.Super. 1983), which states that REAP is

"logically" a lesser-included offense of attempted murder. (**See** appellant's brief at 26-28.)[3]

> Historically, the settled law in Pennsylvania has been that a defendant may be convicted of an offense that is a lesser-included offense of the crime actually charged. This doctrine promotes judicial economy, avoids inconsistent results, and enhances the quality of jury deliberations by assuring that factfinders, informed of the option of convicting of lesser offenses, focus their attention on the presence or absence of those elements that distinguish the greater or lesser offenses.

**Commonwealth v. Sims**, 919 A.2d 931, 938 (Pa. 2007) (citations and internal quotation marks omitted).

A previous panel of this court has further stated, with regard to jury instructions:

> A jury charge on a lesser-included offense is permissible so long as it does not offend the evidence presented, **i.e.**, there is some disputed evidence concerning an element of the greater charge or the undisputed evidence is capable of more than one rational inference. **Commonwealth v. Hawkins**, [] 614 A.2d 1198, 1203 ([Pa.Super.] 1992) (**en banc**). If a rational jury, given the record evidence, can find the defendant guilty of the lesser-included offense, the court should instruct the jury on the law of the lesser-included offense. **Commonwealth v. Ferrari**, [] 593 A.2d 846, 848

---

[3] The Commonwealth notes that the **Griffin** court "offered no analysis" pertaining to its conclusion that REAP is a lesser-included offense of attempted murder. (Commonwealth's brief at 40.) Whether the **Griffin** court offered any analysis to its conclusion is of no import here. A decision of a previous panel of this court is binding precedent absent intervening authority by our supreme court. **Commonwealth v. Pepe**, 897 A.2d 463, 465 (Pa.Super. 2006), **appeal denied**, 946 A.2d 686 (Pa. 2008), **cert. denied sub nom. Pepe v. Pennsylvania**, 555 U.S. 881 (2008).

([Pa.Super.] 1991), ***appeal denied***, [] 618 A.2d 398 ([Pa.] 1992). ***See also Commonwealth v. Phillips***, 946 A.2d 103, 110 (Pa.Super. 2008), ***appeal denied***, [] 964 A.2d 895 ([Pa.] 2009), ***cert. denied***, 556 U.S. 1264, [] (2009) (reiterating jury charge on lesser-included offense should be given if record evidence would reasonably support verdict on lesser offense).

***Commonwealth v. Houck***, 102 A.3d 443, 451 (Pa.Super. 2014).

The Commonwealth contends that any error on the part of the trial court is harmless. (Commonwealth's brief at 40-41.) Our supreme court has defined harmless error as follows:

> The doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that a defendant is entitled to a fair trial but not a perfect one.

***Commonwealth v. Allshouse***, 36 A.3d 163, 182 (Pa. 2012), quoting ***Commonwealth v. Thornton***, 431 A.2d 248, 251 (Pa. 1981) (quotation marks and brackets omitted).

Here, we find the trial court's refusal to provide the jury with instructions pertaining to REAP to be harmless error. As noted in detail above, the Commonwealth presented sufficient evidence to warrant convictions for two counts of attempted murder. Accordingly, appellant is not entitled to relief under his fifth issue on appeal.

**VI.**

In his sixth and final issue on appeal, appellant avers that the trial court's sentence of 25-57 years' imprisonment was harsh and excessive. (Appellant's brief at 29.) In his argument, appellant challenges the discretionary aspects of his sentence.

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.
>
> [***Commonwealth v. Walls***, 926 A.2d 957, 961 (Pa. 2007)] (internal citations omitted).
>
> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right.

*Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa.Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 909 A.2d 303 (Pa. 2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa.Super. 2003), *appeal denied*, 831 A.2d 599 (Pa. 2003).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa.Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra*, *supra* at 912-913.

As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. *Commonwealth v. Malovich*, 903 A.2d

> 1247, 1252 (Pa.Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. ***Id.***

***Commonwealth v. Moury***, 992 A.2d 162, 169-170 (Pa.Super. 2010).

Here, we begin our analysis by determining whether appellant has complied with the procedural requirements of challenging his sentence. First, appellant timely filed his notice of appeal pursuant to Pa.R.A.P. 902 and 903. Second, appellant filed a post-sentence motion on January 20, 2017.

The third procedural prong set forth in ***Evans*** requires us to determine whether appellant's brief has a fatal defect—or put another way, fails to include a statement containing the reasons relied on for an allowance of an appeal "with respect to the discretionary aspects of sentence." ***See*** Pa.R.A.P. 2119(f). In cases where an appellant has failed to comply with Rule 2119(f) and the appellee objects, we are not permitted to review the merits of the claim and must therefore deny allowance of appeal. ***Commonwealth v. Kiesel***, 854 A.2d 530, 533 (Pa.Super. 2004). Here, appellant failed to include a Rule 2119(f) statement in his brief and the Commonwealth objected. (***See*** Commonwealth's brief at 48.) Accordingly,

we cannot review appellant's claim on its merits and deny allowance of appeal as to the discretionary aspects of sentence.[4]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/15/19

---

[4] Alternatively, even if appellant had complied with Rule 2119(f), he nonetheless fails to raise a substantial question. A substantial question is raised when an appellant "advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Prisk**, 13 A.3d 526, 533 (Pa.Super. 2011) (citation omitted). Here, appellant's argument contains little more than a brief recitation of the facts and hyperbolic rhetoric concerning the sentencing proceedings. (**See** appellant's brief at 29-30.)