J-S41006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER RAYMOND DAVIS | : | |
| | : | |
| Appellant | : | No. 2008 MDA 2018 |

Appeal from the Judgment of Sentence Entered July 11, 2018
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000270-2013

BEFORE:   LAZARUS, J., MURRAY, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.:                **FILED SEPTEMBER 27, 2019**

Christopher Raymond Davis appeals from his judgment of sentence, entered in the Court of Common Pleas of Lebanon County, after a jury convicted him of one count of criminal attempt[1] (criminal homicide)[2] and two counts of aggravated assault.[3]  Upon careful review, we affirm.

The facts of the case are as follows: Davis was working as a bouncer at Woofer Magoo's (the Bar) on the night of March 2, 2012.  That night, the victim, Jose Pacheco, went to the Bar with Jeremy Grose and the woman Pacheco was dating at the time, Dianna Lebron.  Pacheco left the Bar at approximately 1:30 or 2:00 A.M., but Lebron did not leave with him.

_____

[1] 18 Pa.C.S.A. § 901.

[2] 18 Pa.C.S.A. § 2501.

[3] 18 Pa.C.S.A. § 2702.

_____

*   Retired Senior Judge assigned to the Superior Court.

Thereafter, Pacheco tried to get back into the Bar, but Davis prevented his re-entry. Pacheco punched Davis, and the two continued to fight outside of the Bar until it was broken up by another bouncer. Davis was visibly upset when he returned to work at the Bar.

Later, Davis and Pacheco met in a parking lot on the corner of 7th and Willow Streets ("Willow Street Lot"), where they began to fight each other; no one else joined in on the fight. Around the same time, Sergeant Jeffrey Marley of the Lebanon Police Department was on patrol near the 700 block of Willow Street. He noticed several people standing in the Willow Street Lot, and saw people making gestures in a manner that suggested a fight had occurred or was about to occur. Sergeant Marley saw Grose shove Pacheco into a van, which sped out of the Willow Street Lot. Sergeant Marley engaged his emergency lights and followed the van to Good Samaritan Hospital. Grose then jumped out of the van covered in blood screaming, "his boy got stabbed." N.T. Trial, 11/6/13, at 9. Grose told Sergeant Marley that the stabbing occurred at the Willow Street Lot.

Pacheco was in the back of the van, "very pale in color" and "appeared to be lifeless." *Id.* at 10. Hospital personnel escorted Pacheco into the hospital and determined he had been stabbed approximately 11 times. Sergeant Marley questioned Pacheco as he was fading in and out of consciousness. Pacheco indicated that a bouncer stabbed him. Sergeant Marley asked if the bouncer was from Woofer Magoo's and Pacheco nodded in the affirmative.

- 2 -

At trial, Vivian Rodriguez testified that she was at the Bar until approximately 2:00 A.M. on the night of the altercation. When she left the Bar, she noticed Davis also leave and walk toward the Willow Street Lot. *Id.* at 38. She stated that she observed Davis fighting in the lot with another person she did not know. *Id.* at 38–39. She also testified that she observed Davis making stabbing motions during the fight. *Id.* at 39. She then witnessed the other person fall to the ground, at which point she observed Davis run away from the scene. *Id.* at 39, 42.

Grose testified that he and Davis's cousin, Jermel Davis (Mel), were the closest to the fight. He stated Mel was approximately 10 to 20 feet away from Davis and Pacheco, circling around the fight. *Id.* at 175. Grose explained that he turned away for a moment, but when he looked back, he saw Pacheco with stab wounds, and no one other than Davis was standing near Pacheco. *Id.* at 175–76.

After the fight, Detective Keith Uhrich of the Lebanon City Police Department surveyed the Willow Street Lot, where he found trails of blood, two hats, and two knives. *Id.* at 21, 22–23. One knife had an eagle on it, and the other knife was a box cutter. The knife with the eagle on it had blood on the handle and the blade. *Id.* at 29. Later, Detective William Walton sought to locate Davis. He went to the home of Andrew Robinson, a bouncer at the Bar, but Davis was not with him. Robinson explained that Davis left the bar with Mel, and suggested that Davis and Mel may be at Mel's girlfriend's house. Detective Walton went to Mel's girlfriend's house, where they found

- 3 -

Mel's girlfriend sitting in a red van. Detective Walton searched the red van and found a knife similar to the knife found at the Willow Street Lot, and a small amount of blood on the van's passenger door exterior. *Id. at* 207–10. Despite Detective Walton's best efforts, he was unable to locate Davis. *Id.* at 214.

Davis was later found in New York, and on May 16, 2012, he was arrested and charged with the above-named offenses. *Id.* at 214. On November 6, 2013, a jury found Davis guilty on all counts and, on September 7, 2016, the trial court sentenced him to 20 to 40 years' imprisonment. On October 5, 2016, Davis filed a notice of appeal. Subsequently, on July 3, 2017, Davis sought remand on the basis of newly-discovered evidence in the form of a witness who claimed to have witnessed the fight and who would testify that Davis did not stab Pacheco. On August 8, 2017, this Court granted Davis's motion for remand and vacated Davis's judgment of sentence. ***Commonwealth v. Davis,*** 1677 MDA 2016 (Pa. Super. filed 8/8/17) (unpublished memorandum decision).

On October 23, 2017, the trial court held an evidentiary hearing on the newly-discovered evidence claim. On June 20, 2018, the trial court denied Davis's motion for a new trial and ordered Davis to appear for the re-imposition of sentence on July 11, 2018, at which point the trial court re-imposed the original sentence. Davis filed a timely post-sentence motion on July 20, 2018, which the trial court also denied. On December 5, 2018, Davis

filed a timely notice of appeal to this Court followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Davis raises the following issues for our review:

1.     Whether the trial court erred and/or abused its discretion by finding that there was sufficient evidence produced at trial to sustain a conviction for counts 1 through 3 of the criminal information.

2.     Whether the trial court erred and or abused its discretion by failing to find that the verdict was contrary to the weight of the evidence.

3.     Whether the trial court erred and/or abused its discretion by failing to grant [Davis] a new trial.

4.     Whether the trial court erred and/or abused its discretion by having multiple judges preside over [Davis]'s criminal trial.

5.     Whether [Davis] is entitled to a new trial when the trial court failed to preserve the transcripts from [Davis]'s trial due to circumstances outside of [Davis]'s knowledge and control.

6.     Whether the trial court erred and/or abused its discretion by denying [Davis]'s post-sentence motion.[4]

Brief of Appellant, at 6–7 (unnecessary capitalization omitted).

Davis first claims the evidence presented at trial was insufficient to sustain his convictions. *Id.* at 6. Specifically, Davis claims the Commonwealth failed to present any physical evidence linking him to the weapon or the actual crime. Davis is entitled to no relief.

---

[4] Davis presented no separate argument on this claim, and simply incorporated by reference his arguments with respect to his other issues. Accordingly, we will not separately address this claim.

We review Davis's sufficiency of the evidence claim under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not [re-]weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Giordano***, 121 A.3d 998, 1002–1003 (Pa. Super. 2015).

The jury convicted Davis of one count of criminal attempt (criminal homicide). Under 18 Pa.C.S.A. § 901(a), "[a] person commits an attempt when, with the intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." Here, the specific crime Davis intended to commit is criminal homicide. "A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.C.S.A. § 2501(a). To prove criminal attempt (criminal homicide), a person must take a "substantial step toward the commission of a killing, with the specific intent

- 6 -

in mind to commit such an act." ***Commonwealth v. Dale***, 836 A.2d 150, 153 (Pa. Super. 2003). "[T]he use of a deadly weapon on a vital part of the human body is sufficient to establish the specific intent to kill." ***Commonwealth v. Hilliard***, 172 A.3d 5, 12 (Pa. Super. 2017) (internal citations omitted).

Davis was also convicted of two counts of aggravated assault. A person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Further, a person is guilty of aggravated assault if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S.A. § 2702(a)(4). A victim suffers a "serious bodily injury" when the injury "creates a substantial risk of death . . . permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

Here, the evidence adduced by the Commonwealth at trial was more than sufficient to establish Davis's guilt. Pacheco and Davis fought earlier outside of the Bar on the night of the stabbing. N.T. Trial, 11/6/13, at 58–59. After the initial fight, multiple witnesses—including Davis himself—described Davis as "mad" and "upset" when he returned to work. ***Id.*** at 88, 104–105, 113, 257. When questioned at the hospital immediately after the attack, Pacheco stated the bouncer from the Bar stabbed him. ***Id.*** at 13. Pacheco

later gave a statement identifying Davis as the bouncer who stabbed him, and further picked Davis out of a photo array. *Id.* at 148–49, 151–52. In addition, Grose testified that he and Mel were the closest to the fight, and when Grose saw Pacheco's stab wounds, no one other than Davis was standing near Pacheco. *Id.* at 175–76. Further, DNA evidence showed Pacheco's blood on Davis's baseball cap, the passenger side door of Mel's girlfriend's van, and the knife found at the Willow Street Lot. *Id.* at 237–38. Additional evidence showed that there was another knife in the van similar to the knife found at the Willow Street Lot, which was used to stab Pacheco. *Id.* at 210, 288. Finally, the Commonwealth presented eyewitness testimony of Rodriguez, who testified that she saw Davis stab Pacheco at the Willow Street Lot, and that they were the only two involved in the fight. *Id.* at 38–43. In sum, the evidence presented at trial clearly demonstrated that Davis intended to cause Pacheco serious bodily injuries, *see* 18 Pa.C.S.A. § 2702(a)(4), and that Davis took "a substantial step toward the commission of a killing." *Dale*, 836 A.2d at 153. Accordingly, he is entitled to no relief.

Davis next claims that the verdict was contrary to the weight of the evidence. Brief of Appellant, at 6.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well[-]settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the evidence, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so

contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Houser,* 18 A.3d 1128, 1135–36 (Pa. 2011) (citations and internal quotation marks omitted).

Here, Davis argues that the lack of physical evidence linking him to the crime, as well as inconsistencies in the testimony at trial, support a determination that the verdict was contrary to the weight of the evidence. However, the Commonwealth presented sixteen vigorously cross-examined witnesses, as well as video recordings, audio recordings, and physical evidence. It was within the sole discretion of the jury to assess the credibility of the testimony and weigh the evidence presented at trial. *Commonwealth v. Williams,* 854 A.2d 440, 445 (Pa. 2004). Sitting as fact-finder, the jury was free to believe all, part or none of the testimony presented. *Houser,* 18 A.3d at 1135–36. The jury was also free to resolve any inconsistencies in the testimony. *See Commonwealth v. Horne,* 89 A.3d 277, 286 (Pa. Super. 2014). Accordingly, we can discern no abuse of discretion on the part of the trial court in rejecting Davis's weight claim.

Next, Davis claims that the trial court abused its discretion by failing to grant him a new trial based on newly-discovered evidence. Brief of Appellant, at 6. He is entitled to no relief.

On July 3, 2017, Davis's counsel filed with this Court a motion for remand, stating that he had received a letter from an individual named Michael McGrath. This letter indicated that McGrath had witnessed the events leading to Davis's incarceration and was able to provide exculpatory evidence. In response, this Court vacated Davis's judgment of sentence and remanded the case back to the trial court for an evidentiary hearing to determine whether a new trial was warranted. At the hearing, McGrath testified that he saw the fight and stated that Mel jumped into the fight and stabbed Pacheco. *See* N.T. Evidentiary Hearing, 10/23/17, at 52–54. After the hearing, the trial court issued an order denying Davis's motion for a new trial and directed that Davis appear for re-imposition of sentence.

To receive a new trial based on newly-discovered evidence, an appellant must prove the evidence:

> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of the witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Padillas,* 997 A.2d 356, 363 (Pa. Super. 2010).

Here, the trial court properly concluded that McGrath's testimony was merely corroborative of Davis's assertion that Mel stabbed Pacheco, which he presented at trial through cross-examination of the Commonwealth's witnesses and presentation of physical evidence. *See* N.T. Trial, 11/6/13, at 184–91. In addition, McGrath's testimony would have served solely to

- 10 -

impeach the credibility of witnesses who affirmed that Davis was the one who stabbed Pacheco, and that Davis and Pacheco were the only two fighting. *See id.* at 13–14, 39, 148–50 (Sergeant Marley, Vivian Rodriguez, and Detective Fields providing consistent testimony that Davis stabbed Pacheco); *See also id.* at 121–22, 174–75 (Pacheco and Jeremy Grose providing consistent testimony that Davis and Pacheco were the only two involved in the fight). Finally, McGrath's testimony goes against the overwhelming evidence supporting Davis's conviction and would likely not result in a different verdict. Accordingly, the court did not err in declining to grant Davis a new trial.

Davis next asserts the trial court abused its discretion by having multiple judges preside over the trial. Brief of Appellant, at 6. However, Davis did not raise this objection at trial or in his post-sentence motion. Accordingly, he has waived this issue on appeal. *See* Pa.R.A.P. 302(a) (stating issues not raised at trial are waived and cannot be considered for first time on appeal).

Finally, Davis asserts that he is entitled to a new trial because the trial court failed to preserve the transcript from his trial. Brief of Appellant, at 6. Again, Davis failed to raise this objection in his post-sentence motion, and the issue is waived. *See* Pa.R.A.P. 302(a). In any event, the transcript was located and filed of record on November 20, 2017. Thus, the notes of testimony were available to Davis in ample time to prepare his post-sentence motion and subsequent appellate brief. For these reasons, Davis is entitled to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/27/2019